## WILLIE ARMSTEAD v. STATE.

No. A-2283.  Opinion Filed July 20, 1915.

1. **VAGRANCY**—Indictment and Information—**Necessary Allegations.** It is sufficient, as a general rule, to charge a statutory offense in the words of the statute; but when a more particular statement of the facts is necessary to charge all the essential elements of the offense, they must be alleged.

2. **SAME**—What Constitutes. An information under the first subdivision of section 2515, Rev. Laws, alleging in words of the statute, that on a certain day, the defendant was "an idle person who lives without any means and who has no visible support and makes no exertion to obtain a livelihood by honest employment," to be sufficient to charge vagrancy should allege that on a day certain and for some space of time previous thereto, the defendant committed the acts or conduct charged, and should further allege that the defendant is an able bodied person and was able to work.

3. **SAME**—Evidence—Sufficiency. See opinion for evidence summarized, which is held insufficient to support a conviction for vagrancy.

(Syllabus by the Court.)

*Appeal from County Court, Canadian County;*
*W. A. Maurer, Judge.*

Willie Armstead, convicted of vagrancy, appeals.  Reversed.

*E. T. Barber,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J.  On information filed in the county court of Canadian county which alleges "that one Willie Armstead, late of the county of Canadian, state of Olakhoma, on or about the 19th day of December, 1913, at and within said county and state, did then and there, willfully, unlawfully be an idle person who lives without any means, and who has no visible support and makes no exertion to obtain a livelihood by honest employment, contrary to," etc., the plaintiff in error was tried and found guilty of vagrancy.  Motions for new trial and in arrest of judgment were duly filed and overruled.  On the ᵗh day of April, 1914,

the court rendered judgment and he was sentenced to be confined in the county jail for 30 days and to pay a fine of $50. To reverse the judgment an appeal was perfected.

The first error assigned is that the court erred in overruling the demurrer which was duly interposed to the information and the motion in arrest of judgment.

Our penal code specifies various acts as constituting vagrancy, as follows:

"The following persons are vagrants within the meaning of this article:

"First. An idle person who lives without any means, or who has no visible support and makes no exertion to obtain a livelihood by honest employment.

"Second. Any person who strolls or loiters idly about the streets of any city or town, having no local habitation and no honest business or employment.

"Third. Any person who strolls about to tell fortunes or to exhibit tricks not licensed by law.

"Fourth. Any common prostitute, any manager or controller of a house of prostitution or ill-fame, or any one employed therein as barkeeper, caller of figures for dances, or habitual frequenters thereof.

"Fifth. Any professional gambler, or gamblers commonly known as tinhorn gamblers, card players or card sharps.

"Sixth. Any person who goes about to beg alms, who is not afflicted or disabled by a physical malady or misfortune.

"Seventh. Any habitual drunkard, who abandons, neglects, or refuses to aid in the support of his family." (Section 2515, Rev. Laws 1910.)

The ground of the demurrer is: "That the facts stated do not constitute a public offense."

The information here, it will be observed, follows the language of the first clause of the section above quoted. The general rule that it is sufficient to charge a statutory offense in the words of the statute is subject to the qualification that it is not sufficient to set forth the offense in the words of the statute, unless those words, of themselves, fully, directly and expressly set forth all the elements necessary to constitute the offense intended to be punished, and under the Constitution an indictment or informa-

tion which does not substantially allege at least in general terms, all the essential elements of the offense, is insufficient to support a judgment of conviction. In Wharton's Crim. Pleading and Practice it is said:

"On the general principles of common law pleading, it may be said that it is sufficient to frame the indictment in the words of the statute, in all cases where the statute so far individuates the offense that the offender has proper notice, from the mere adoption of the statutory terms, what the offense he is to be tried for really is. But in no other case is it sufficient to follow the words of the statute. It is no more allowable, under a statutory charge, to put the defendant upon trial without specification of the offense, than it would be under a common law charge." (Section 220.)

"The terms of a statute may be more broad than its intent, in which case the indictment must so differentiate the offense as may effectuate the intention of the Legislature." (Section 221.)

It is obvious that a person may be guilty of the acts and conduct charged in the information here and still not be a vagrant. At least the information should further allege that the defendant is an able bodied person and was able to work, and the conduct condemned in the second clause of section 2515 should have been alleged in order to sufficiently charge an offense under the first clause. Vagrancy is a continuing offense and it was essential that the information contain a continuendo, or to be sufficient it should allege that on a day certain and for some space of time previous thereto, the defendant committed the acts or conduct charged.

For the reasons stated we are clearly of the opinion that the court erred in overruling the demurrer.

The remaining assignment of error is that the verdict is contrary to law and to the evidence.

The evidence for the state was in substance as follows:

The first witness, George Johnson, testified that he had lived in El Reno some fifteen years and knows the people around him who seek and perform labor; that his neighborhood is peopled mostly by colored people; that he had been noticing Willie Armstead for a year, may be more, does not know where he

lives, but noticed him on the street; has not seen him doing anything; don't know whether he ever worked or not; has not seen him at work and don't know anything about that; don't know whether he had any visible means of support or not. That he usually went pretty nice and clean in his dress and looked as if he was not in the habit of doing any work.

A. C. Cowden testified that he was a deputy sheriff: well acquainted with that part of El Reno inhabited by colored people; that he had known the defendant, Willie Armstead, for about a year; that he had seen him in different places, usually in the part of town inhabited by colored people; that he never saw him doing anything; that he did see him at Roxie Morrison and Jim Hurbert's place, usually called the "Big 8," a dance hall; that he would see the defendant around there quite often; that the defendant had no occupation so far as known to witness, and from what he had seen of witness had always supposed him to be a man that did not work, that he had always went well dressed.

Sheriff Clark testified to having known the defendant by seeing him about the city; that he could not find out that he was doing any work, and found out that he was living off of women of ill repute; that he borrowed some money from these women.

The defendant demurred to the evidence as insufficient to show the commission of the offense charged. The demurrer was overruled and exception reserved.

The defendant as a witness in his own behalf testified that he was raised at Oklahoma City, but had lived in Kansas City with his mother about four years; that his wife was raised in El Reno and he married her there in 1909; that he worked as a Pullman porter for about two years and supported his wife at El Reno; that his wife was sick and he returned to El Reno and shortly after his wife became insane and was sent to the asylum at Norman; that when he returned to El Reno the last time he deposited $170 in the First National Bank; that he put some more money in and drew some more out and had eighty dollars in the First National Bank when he was arrested; that work was scarce in El Reno; that he played ball last summer

and earned some money and did some work in a pool hall and made his home with Luke Hotchkins; that the witness George Johnson was city scavenger and he did not ask him for work; that he had been in El Reno the last time about eight or nine months. On cross-examination he was asked if he did not put up a cash bond of $50 when arrested and answered that he did. He was then asked if he did not borrow $40 of the money deposited from Roxie Morrison, who was in jail at the time on a bootlegging charge, and answered, "yes."

The evidence in our opinion does not support the conviction. The evidence is not sufficient to show that the defendant was an idle person who lives without any means and without visible support. Assuming that the evidence tending to show acts and conduct constituting vagrancy under the second and fourth subdivisions of section 2515, Rev. Laws, already quoted, was competent and admissible to prove the charge made under the first subdivision of this section, we still think the evidence does not support the conviction. In fact, the inculpatory evidence is entirely unsatisfactory and the fact that the defendant had a bank account is undisputed. For the reasons indicated the judgment is reversed.

FURMAN and ARMSTRONG, JJ., concur.