Reta Wynona GRAHAM, Plaintiff-in-Error,

v.

The STATE of Oklahoma, Defendant-in-Error.

No. A–14170.

Court of Criminal Appeals of Oklahoma.

Nov. 13, 1968.

Carroll Samara and John C. Monk, Jr., Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

NIX, Presiding Judge.

Plaintiff in error, Reta Wynona Graham, hereinafter referred to as defendant, was charged by information in the District Court of Oklahoma County with the crime of Carrying a Concealed Weapon After Former Conviction of a Felony. She was tried by a jury, found guilty, and sentenced to one year in the penitentiary. On July 6, 1966, defendant's motion for a new trial was overruled and judgment and sentence were entered. It is from said judgment and sentence that defendant has perfected her appeal to this Court.

Substantially, the uncontroverted testimony indicates that one Higino Jiminez and the defendant, who was carrying the small child of Jiminez, went into a tavern in Oklahoma City some time prior to midnight on the 3rd of December, 1965, where they were subsequently arrested. One of the arresting officers testified that they entered the tavern to "check for drunks", and that they were concerned when they saw the small child in the establishment. The officers questioned the defendant as to whose child it was, and why they were in the tavern. The officers also asked if the defendant had been into trouble before and she told them that she had. The officers then placed the defendant under arrest for vagrancy, and Jiminez under arrest for public drunkenness.

Jiminez was searched on the sidewalk outside the tavern, and then he and the defendant were placed into the patrol car. While the car was in route to the Police Station, the officer asked to search defendant's purse, and she consented. The officers did not find a weapon in the purse, which was their announced reason for searching the purse, but they did find some dice. Upon arriving at the police station, the police matron searched the defendant and found a pistol, a 6.35 Beretta, wedged in her bra. Defendant was then booked in on three charges—vagrancy; possession of gambling paraphernalia; and, for carrying a concealed weapon after former conviction of a felony. The vagrancy charge was subsequently dropped.

Defendant testified that she lived with her husband, who is employed with a local insurance company, and her three children. She further testified that she and her husband were friends with Jiminez, and that her husband had purchased cars from him. As regards the evening in question, defendant testified that her car broke down and that, unable to locate her husband, she called Jiminez for a ride home. After Jiminez, accompanied by his small child, picked up defendant, he stopped at the tavern in question to get a beer and to allow the child to go to the restroom with defendant. The three entered the tavern and after defendant, with the child, returned from the restroom, the defendant ordered coffee for herself, a coke for the child, and stood while waiting for Jiminez to finish his beer.

The testimony further indicates that although Jiminez was searched prior to entering the scout car, the defendant was not. According to Jiminez, he handed the pistol to the defendant on the way to the police station. He further testified that he believed the police would allow the defendant and his child to leave the police station without being searched.

Counsel for the defendant moved to suppress the gun from being introduced as evidence prior to the trial, at the beginning of the trial, and, at the time the gun was offered in evidence during the trial.

It is defendant's primary argument on appeal that the discovery of the gun on defendant's person was a result of an unreasonable search and seizure because it was not conducted pursuant to a lawful arrest or search warrant.

Absent a warrant, it is apparent that the only justification for the search of the defendant was that such was conducted in connection with a lawful arrest. If the officers had legally arrested the defendant for vagrancy, she could then be taken into custody and lawfully searched. Even if the evidence of another crime—the dice in the defendant's purse—had not been found, the officers would have been justified in searching the defendant at the police station in connection with the original arrest for vagrancy. However, if defendant was not lawfully arrested, then no search—either of her purse or her person at the police station —would have been justified.

Only one of the two arresting officers testified at the trial of the defendant. This officer testified on cross-examination, as follows:

"Q. (By Mr. Samara) At the time that you went in, this defendant wasn't doing anything wrong, was she, she wasn't creating a disturbance?

A. No, sir, she wasn't.

Q. And she wasn't under the influence of intoxicating beverages?

A. She didn't appear to be drunk, no sir.

Q. Did you see her violating any law at all?

A. We were concerned with the child.

Q. *Did you see her violate any law at all, sir?*

A. *No, sir, I didn't.* (Emphasis ours)

Q. Did you have a warrant for her arrest?

A. No, sir, I didn't.

Q. And did you have any reason to believe that she was involved in the commission of a felony that was outstanding for which she might be arrested and charged with?

A. Not other than the child being in that establishment.

Q. I'm not talking about the child, did you have any reason to believe that a felony had been committed that you had knowledge of that she might have been involved in and you wanted her for it?

MR. COOPER: We object to that, that the witness has already answered that question, he told him what the circumstances were.

THE COURT: It will be sustained.

MR. SAMARA: I didn't hear.

THE COURT: Sustained.

MR. SAMARA: All right, then she was not violating any law then to your knowledge at the time that you arrested her, was she?

A. No, sir."

■ By the officer's own testimony the defendant was not violating any law at the time that he arrested her. Nevertheless, defendant was arrested for vagrancy. Are we to infer from the officer's testimony and conduct that vagrancy is not a crime, but merely an excuse to arrest? Does the arresting officer mean to imply that he can arrest an individual as a vagrant when he finds no violation of a crime? Certainly this is not the state of the law.

■ 21 O.S.1961, § 1141, defines a vagrant and to be convicted as a vagrant on a state charge, an individual's conduct would have to fall within the scope of one of the eight categories of prohibited action listed therein. 11 O.S.1961, § 667, authorizes cities to fine vagrants who are "without visible means of support, or some legitimate business". Whether it be a state or city charge, vagrancy is conduct or the existence of a condition which constitutes unlawfulness. In Armstead v. State, 11 Okl. Cr. 649, 150 P. 511, this Court held:

"Vagrancy is a continuing offense and it was essential that the information contain a continuendo, or to be sufficient it should allege that on a day certain and for some space of time previous thereto, the defendant committed the acts or conduct charged."

As to the purpose of vagrancy statutes, we note this Court's holding in Huff v. State, 34 Okl.Cr. 261, 246 P. 496:

"The purpose of vagrancy statutes is to prevent idlers, who are without means of support, and without employment, and who make no exertion to obtain employment, from strolling about the community and becoming criminals, drones, or charges upon the public, and to bar fortune tellers, prostitutes, beggars, and such characters from loitering about the streets of any city or town; but, in order to convict for vagrancy, the proof must bring the accused clearly within the statute. The evidence in this case does not satisfy this requirement, particularly in view of the explanation and evidence offered by the defendant."

■ Before there can be the commission of a crime, there must be the occurrence of an unlawful act. In Oklahoma only certain specific conduct will support a charge of vagrancy. A charge of vagrancy is not a "catch-all" by which individuals may be arrested, searched, and confined where there is no apparent offense.

The public must be able to ascertain what acts are unlawful. Statutes and ordinances which are so broad and undefined as to allow arrest only at the whim of an officer are unconstitutional, as failing to provide clearly defined laws and allowing "government by the moment-to-moment opinions of a policeman on his beat." Shuttlesworth v. City of Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965). Due to their failure to clearly describe what acts constitute vagrancy, several state statutes have recently been held unconstitutional for vagueness.[1]

In Oklahoma, where an offense is committed in the presence of an officer, he has the right to arrest the offender without a warrant, and if the arrest is not a subterfuge and is made in good faith, the offender and his immediate possessions may be lawfully searched. Franklin v. State, Okl.Cr.App., 281 P.2d 204. But if it is a subterfuge and the facts are insufficient to justify the arrest without a warrant, the arrest cannot be made valid or justified by what it brings to light. Shirey v. State, Okl.Cr.App., 321 P.2d 981; Catron v. City of Ponca City, Okl.Cr.App., 340 P.2d 504.

In Bagwell v. State, Okl.Cr.App., 327 P.2d 479, this Court held:

"We see, then, that if the defendant did not as a matter of fact commit an offense in the presence of the officers, in the absence of a warrant they would not be entitled to arrest and search his car. The offense must be real, and not some triviality, excuse or subterfuge to enable the officers to make a search."

In Brinegar v. State, 97 Okl.Cr. 299, 262 P.2d 464, we held:

"This court has never sustained a search where the evidence as reflected by the record convinced it that the arrest was a subterfuge for a search."

In the instant case, the officers did not see the defendant violate any law. Then, clearly defendant's conduct did not constitute vagrancy. Since the arresting officers did not have a warrant, did not see the commission of a crime, and, did not have reason to believe the defendant had committed a felony, the arrest at the tavern was unlawful and any subsequent search of the defendant's purse or person was an unreasonable and unauthorized search. "If [the] arrest is unlawful, the * * * search * * * is unlawful." Wallace v. State, 49 Okl.Cr. 281, 294 P. 198.

In McKee v. State, 59 Okl.Cr. 353, 60 P.2d 216, this Court held:

"Where a conviction is based solely on evidence obtained by means of an unauthorized search and seizure, and admitted over the defendant's objection, the conviction will be reversed as contrary to law and the evidence."

The conviction in the instant case is based solely upon the gun found on defendant and was obtained by means of an unauthorized search and seizure. This evidence was admitted over the objection of the defendant and accordingly, the conviction must be reversed.

Reversed and remanded with instructions to dismiss.

BUSSEY and BRETT, JJ., concur.

1. Alegata v. Commonwealth, Mass., 231 N.E.2d 201 (1967); Fenster v. Leary, 20 N.Y.2d 309, 282 N.Y.S.2d 739, 229 N.E.2d 426 (1967); United States v. Margeson, 259. F.Supp. 256 (E.D.Pa. 1966); Baker v. Bindner, 274 F.Supp. 658 (W.D.Ky.1967); and City of Akron v. Effland, 112 Ohio App. 15, 174 N.E. 2d 285 (1960).