Carl F. REHERMAN, Charles L. Goodwin, Richard L. Weathers, Robert W. Swanagon, and Paul B. Allee, Petitioners;

v.

OKLAHOMA WATER RESOURCES BOARD, Respondent.

No. 61890.

Supreme Court of Oklahoma.

April 5, 1984.

Rehearing Denied May 8, 1984.

---

9. 22 Am.Jur.2d Death, § 1, 2.

10. *Brookshire v. Burkhart,* 141 Okl. 1, 283 P. 571, 67 A.L.R. 1059 (1930).

Paul Johanning, Bryan Neal, Oklahoma City, for petitioners.

Michael C. Turpen, Atty. Gen., George R. Barr, Jr., Asst. Atty. Gen., R. Thomas Lay, Gen. Counsel, Dean A. Couch, Oklahoma Water Resources Bd., Oklahoma City, for respondent.

ALMA WILSON, Justice.

This cause is an original action brought before this Court pursuant to 82 O.S.Supp. 1982, § 1085.37, which vests the Supreme Court with exclusive jurisdiction over any litigation involving the validity of any investment certificates issued by the Oklahoma Water Resources Board under 82 O.S. Supp.1982, § 1085.33. Original jurisdiction is assumed.

On January 31, 1984, the respondent, Oklahoma Water Resources Board, passed resolutions accepting bids and authorizing the issuance and sale of investment certificates in the principal amount of $50 million. The investment certificates were denominated "State Loan Program Revenue Bonds, Series 1984." The petitioners challenge the legality and constitutionality of the sale, arguing that the financing proposed by this bond issue is forbidden by Okla.Const., Art. X, §§ 14 and 15.

The statutory scheme authorizing the Water Resources Board to issue invest-ment certificates is found at 82 O.S.1981, §§ 1085.31, *et seq.*, as amended. Proceeds from the investment certificates, which are in the nature of bond revenues, are to be used to provide funds for the development of statewide and local plans for the use and control of water in Oklahoma.

The Legislature's declared public purposes of this Act are:

... to provide or assist in providing for the acquisition, development and utilization of storage and control facilities of the waters and sewage of this state for the use and benefit of the public, and for the conservation and distribution of water for beneficial purposes in or from reservoirs or other storage facilities constructed, or hereafter constructed, modified or enlarged, within Oklahoma....

Section 1085.31, *supra.* To achieve these purposes, the Legislature authorized the Board to issue by public sale its investment certificates and to use proceeds from these to make loans to eligible public entities[1] for qualified water projects. 82 O.S.Supp. 1982, §§ 1085.33, 1085.36.

Under the terms of Section 1085.33, the investment certificates issued "shall not be an indebtedness of the State or general obligations of the Board, but shall be special obligations payable solely from the revenues derived from the project or such other revenues as may be pledged by the applicant for such purposes...." Section 1085.36 of the same title authorizes the Board to lend to eligible entities sufficient funds to acquire or construct projects.

A revolving fund, continuing and not subject to fiscal year limitations, designated as the "Statewide Water Development Revolving Fund" was created under 82 O.S.Supp.1982, § 1085.40. To establish this fund the Legislature made a one-time appropriation of $25 million of general revenue funds to be used and expended by the Board to accomplish authorized purposes of

---

1. "Eligible entity" means any city, town, county or the State of Oklahoma, and any rural water or sewer district, irrigation district, public trust, master conservancy district or other political subdivision or any combination thereof. 82 O.S.Supp.1982, § 1085.32(3).

the Act. *See*, 1982 Okl.Sess.Laws, Ch. 374, § 34. Additionally, Section 1085.41 authorizes the Board to use monies placed in the revolving fund for security and collateral for investment certificates issued by the Board.[2]

According to the official statement of the Water Resources Board relating to the loan program,[3] of the $25 million appropriated to the revolving fund, $7.5 million is to be used to provide a reserve, designated as the Debt Service Reserve Fund, for payment of the principal of and interests on the bonds. The Bond Resolution itself requires that the minimum required balance of the Debt Service Reserve Fund shall not be less than $7.5 million. Provision is made in the Bond Resolution to replenish this reserve fund from monies available in the Revolving Fund. Section 5.09 of the Bond Resolution sets forth details of the Debt Service Reserve Fund and states in part:

There is hereby created and established with the Trustee the Debt Service Reserve Fund. Pursuant to and in accordance with Section 5.04 of this Resolution there shall be deposited immediately upon delivery of and payment for the Bonds from the Statewide Water Development Revolving Fund held by the State Treasurer an amount equal to the Reserve Fund Requirement which shall be the minimum required balance of such Fund. The monies in such Reserve Fund shall be first utilized to create a reserve in the amount of the outstanding principal balance of Local Loans originated to Eligible Entities not rated by Standard & Poor's Corporation. Any monies in excess of the total amount of the outstanding balance of loans originated to Eligible Entities not rated by Standard & Poor's Corporation may be utilized, if required, to pay the principal of loans to eligible Entities rated by Standard & Poor's Corporation following an Event of Default by such rated Eligible Entities. In the event monies are transferred from the Debt Service Reserve Fund to the Debt Service Fund to cover any deficiencies occurring therein, the Trustee shall request the Board to direct the State Treasurer, to the extent monies are available and not encumbered, to transfer from the Statewide Water Development Revolving Fund that amount necessary to cause the sum of the transfer and the balance of the Debt Service Reserve Fund to equal the Reserve Fund Requirement. In the event a depletion of such Fund shall have occurred, as a result of a default in the payment of the debt service requirements of a Local Loan, the Local Bonds Payments of the Eligible Entity causing such depletion shall be adjusted so as to replenish the Fund within twenty-four months of such depletion. Income earned on investment of the monies in such Fund shall be transferred to the Loan Account of the Loan Fund until the total amount deposited in such Loan Account shall equal the original amount of the Bonds, and after such amount has been achieved, then such income shall be transferred to the Board to be deposited into the Grant Account of the Revolving Fund held by the State Treasurer on behalf of the Board unless there shall be a deficiency in the Local Bonds Payments and/or a depletion in the Debt Service Reserve Fund, in either case such investment income shall be uti-

2. 82 O.S.Supp.1982, § 1085.41 provides:
 In addition to the purposes outlined in Section [1085.40], all monies placed in the Statewide Water Development Revolving Fund may be used by the Board for security and collateral for investment certificates issued by the Board pursuant to Section 1085.33 of Title 82 of the Oklahoma Statutes. Furthermore, the Board is hereby directed to manage and administer the Statewide Water Development Revolving Fund so as to maintain a revolving fund balance adequate to sufficiently back any and all outstanding investment certificates.

3. "Official Statement of the Oklahoma Water Resources Board Relating to $50,000,000 State Loan Program Revenue Bonds, Series 1984."

lized to make up such deficiency. The monies in such Fund shall be transferred to the Principal Account and/or the Interest Account of the Debt Service Fund to prevent a default in the payment of principal of and interest on the Bonds as the same becomes due and payable....

Focus of the petitioners' argument is the provision which would allow the Board, in the event of a default of a local entity, to transfer monies from the Debt Service Reserve Fund to the Debt Service Fund to pay the principal of the loan of a defaulting local entity to cover any deficiencies occurring in the Debt Service Fund. The petitioners characterize this transfer, along with the statutory authorization for using all monies in the Revolving Fund as security and collateral for the investment certificates, as a guarantee by the State of the loans to the local entities and an assumption by the State of debts of political subdivisions. The petitioners urge that provisions of both Sections 14 and 15 of Article X of the State Constitution would thereby be violated. We confine today's discussion to the narrow issue of whether the pledging of collateral or security by the Board is violative of Sections 14 and 15.

Section 14 of Article X provides in part:

Except as required by the Enabling Act, the State shall not assume the debt of any county, municipal corporation, or political subdivision of the State, unless such debt shall have been contracted to defend itself in time of war, to repel invasion, or to suppress insurrection.

The relevant portion of Section 15 states:

The credit of the State shall not be given, pledged or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the state....

 In deciding the constitutionality of statutes, a legislative act is presumed to be constitutional and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution. Whenever possible, statutes should be construed so as to uphold their constitutionality. *Kimery v. Public Service Co. of Oklahoma,* 622 P.2d 1066 (Okl.1980); *Earnest, Inc. v. LeGrand,* 621 P.2d 1148 (Okl.1980).

 In ascertaining the constitutionality of a legislative act, we do not look to the Constitution to determine whether the Legislature is authorized to do an act but rather to see whether it is prohibited. *Draper v. State,* 621 P.2d 1142, 1146 (Okl.1980). As we stated in *Draper, supra,* at 1146:

If there is any doubt as to the Legislature's power to act in any given situation, the doubt should be resolved in favor of the validity of the action taken by the Legislature. Restrictions and limitations upon legislative power are to be construed strictly, and are not to be extended to include matters not covered or implied by the language used. (*footnote omitted*)

With these rules in mind we turn to the petitioner's constitutional challenges.

 Ideally the bond revenue program would be self-liquidating from proceeds and revenues derived from the projects financed. However, the event of default by a local entity on its loan payment to the Board may necessitate the transfer of the appropriated funds to cover deficiencies in the Debt Service Fund. This would allow the Board to avoid being placed in a defaulting posture on the revenue bonds, for it is the principal account of the Debt Service Fund into which the transfer would be made and from which monies are drawn to make the principal payments on the bonds as they become due and payable.[4] Although the Board in making the transfer does so to avoid its own default, the trans-

---

**4.** Section 5.08 of the Bond Resolution describes the Debt Service Fund. Subsection (b) provides:

(b) *Principal Account.* There is hereby created and established with the Trustee the Principal Account of the Debt Service Fund into which it shall be deposited the principal pay-

fer in substance is an assumption by the State, through the Board,[5] of a debt of a political subdivision.

In this respect the Board submits that the primary security for all loans will be a reserve established by the loan applicant and local trustee in an amount equal to seven months of maximum principal and interest; a mortgage on the principal and interest; a mortgage on the project; and a pledge of revenues derived from the operation of such projects. *See* Section 1085.36. It urges that the securing of part of the bonds with funds previously appropriated and on deposit in the Revolving Fund creates at most a "contingent liability" to existing funds.[6]

▉▉ Nonetheless, it is inescapable that in the event the contingency or contingencies occur, the Board's liability would be triggered. While technically the transfer would be made in order that the Board might maintain the required amount of monies to pay the debt service requirements of the bonds, the Board necessarily would be in the position of assuming debts of defaulting local entities to pay *in part with state funds* the principal of the loans. *See,* Section 5.09 of the bond resolution, *supra.* We therefore hold that the terms of the instant bond resolution would require an unconstitutional assumption of debt by the State on behalf of the local entities. The principle applies that what may not be done directly should not be allowed to be done indirectly. Further, as the Court stated in *Trapp v. Cook Const. Co.,* 24 Okl. 850, 105 P. 667, 671 (1909):

> An act violating the true intent and meaning of the [Constitution], although not within the letter, is as much within

---

ments portion of the transfers from the Revenue Fund. The income earned on investment of monies in such Account shall be retained in such Account and utilized to reduce the next required transfer from the Revenue Fund. If the transfers received from the Revenue Fund are not sufficient to pay the semiannual debt service requirements of the Bonds, the Trustee shall draw first on any monies in the Loan Account, second from the Debt Service Reserve Fund and third from the General Fund as necessary to prevent a default in payment of principal on the Bonds. The monies in such Account shall ·be utilized to make the principal payments on the Bonds as the same become due and payable.

5. The Water Resources Board is "a body corporate and politic and an *instrumentality, agency and department of the State of Oklahoma."* 82 O.S.Supp.1982, § 1085.1(A). (*Emphasis added.*)

6. In passing, with respect to contingencies which could affect liability, we quote from the Board's official statement, *supra,* n. 3, wherein certain risks of bondholders are identified:

If any of the various Local Entities participating in the Program should not be able to generate sufficient Net Revenues Available for Debt Service for payment of the Loan Payments, which shall be equal to the Local Payments on the Bonds, the Board might not be able to pay the debt service requirements of the Bonds. The inability of the various Local Entities to generate sufficient revenues from their pledged Systems could arise due to changes in economic conditions, difficulties in the management and operation capabilities for the pledged Systems, and the lack of sufficient water supply or a reduction in demand for the services of the pledged Systems.

＊　＊　＊　＊　＊

The right of a beneficiary of a public trust to levy and collect monies from a source other than utility revenues is provided in the statutes of the State. The legislature has the ability to rescind the right of such beneficiary to levy and collect the additional funds. If a Local Entity should not receive all of the Additional Revenues or if such collections should decline due to economic conditions, it could force the Local Entity to raise its System rates, fees or charges in an amount necessary to pay the Loan Payments and therefore could inhibit the ability of such Local Entity to pay the debt service requirements of the Local Loan. The occurrence of all or any of such factors could impair the ability of the Local Entity to make timely Local Payments which could impair the ability of the Board to pay the debt service requirements of the Bonds.

MGIC Indemnity Corporation has issued a Municipal Bond Insurance Policy which provides for payment of the principal of and interest on the Bonds in the event that the aforementioned revenue sources are not sufficient to provide for payment of the debt service requirements of the Bonds. The availability of such funding will depend upon the financial condition of the reinsurance agents for such Policy and their legal ability to pay any claims which might arise.

the purview and effect of a prohibition as if within the strict letter; and an act in evasion of the terms of the Constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in express terms forbidden. . . .

■ In drafting Section 14, it is clear that the framers and the people of this State who adopted it intended that the State not assume the debt of any county, municipal corporation, or political subdivision of State. We therefore cannot uphold the validity of the instant bond resolution which in substance could require such an assumption of debt.

■ Further we cannot uphold the validity of this bond resolution for the reason that the pledge of collateral or security of the monies in the Revolving Fund amounts to a pledge or lending of the State's credit in violation of Section 15 of Article X.

Section 1085.41 of the act provides that the Board may use monies on deposit in the Revolving Fund as collateral or security for the satisfaction of the debt created. by the revenue bond sales. Because this authority is limited to the monies in the Revolving Fund to secure bond indebtedness of the Board, the Board urges that it, as an agency of the State, does not come within the prohibition that the State's credit is not to be given, pledged or loaned to "any individual, company, corporation, or association, municipality, or political subdivision. . . ."

While the pledge of security or collateral would indeed secure the Board's indebtedness, the underlying substance of the bond revenue sale is to finance the local entities' projects. According to the Local Loan Agreement, the local loans are to be evidenced by local bonds, issued by the local entity, which are to be purchased by the Board, and to be repaid by the local entities to the Board. The Local Loan Agreements then are to be pledged and assigned by the Board to the trustee for the investment certificate bondholders for their benefit. The monies in the Revolving Fund, which consist in part of appropriated State funds, stand as collateral or security for debts which are primarily those of local entities. The bondholders in purchasing the investment certificates would do so in reliance of the reliability and solvency of the State, through its agency, to stand good on the debt by virtue of the collateral pledged.

The circuitous route of funneling proceeds from the sale of the investment certificates by way of loan to local entities and Board purchase of local bonds is tantamount not only to a "loan" of State credit to the local entity, but also an indirect assumption of the debt of the local entity.

We therefore hold the statutory authority allowing the pledge of appropriated monies in the Revolving Fund as collateral or security, 82 O.S.Supp.1982, § 1085.41, as violative of Okl.Const., Art. X, §§ 14 and 15.

■ The laudable intent and purpose of this Legislative enactment together with the necessity for its passage—for which there may be no better solution—prompts earnest consideration of its approval. The responsibility of the Legislature to accomplish this worthy objective and that of this Court to review and pass upon its constitutionality, however, require diametrically opposite approaches. The Constitution, the bulwark of our law, to which all statutes must yield, must be construed with references to the fundamental principles which support it. *Draper v. State, supra.* Our statutes must be in harmony with the spirit of the Constitution; a void provision of a statute cannot be made valid because of an apparent need for the law attempted to be adopted.

The constitutional restraints of Article X, Sections 14 and 15 are insurmountable blocks to approval of the instant bond program.

This pronouncement makes it unnecessary that we here today address other ob-

jections of the petitioners. Petition for writ of prohibition granted.

BARNES, C.J., and LAVENDER, OPALA and KAUGER, JJ., concur.

HODGES and HARGRAVE, JJ., dissent.

SIMMS, V.C.J., disqualified.