Dear State Senator Herbert
¶ 0 This office has received your request for an Attorney General Opinion. You have asked, in effect, the following question:
Is 47 O.S. 2-117(9) (1998), which provides for ageneralized power allowing officers of the Oklahoma HighwayPatrol to "stop and inspect the contents of all motor vehicles toascertain whether or not the provisions of all general laws arebeing observed," limited by the Fourth Amendment to theUnited States Constitution or Article II, Section 30 of the OklahomaConstitution, which prohibits unreasonable searches andseizures?
¶ 1 Section 47 O.S. 2-117 of Title 47 sets forth the police authority of the Department of Public Safety. That police authority includes the enforcement of the Uniform Vehicle Code, codified at Sections 47 O.S. 1-101 through 47 O.S. 40-102: enforcement of all traffic laws on state highways; inspections aimed at motor vehicle safety; and investigation of traffic accidents or motor vehicle thefts. One subsection of Section 47O.S. 2-117 contains the language which is the subject of your inquiry. It gives "the Commissioner and each officer of the Department of Public Safety" and "all members of the Oklahoma Highway Patrol Division" the power:
 To stop and inspect any motor vehicle or trailer for such mechanical tests as may be prescribed by the Commissioner to determine the vehicle's roadability. Any vehicle which may be found to be unsafe for use on the highways may be ordered removed from said highway until such alterations or repairs have been made that will render said vehicle serviceable for use on the highway. To stop and inspect the contents of all motor vehicles to ascertain whether or not the provisions of all general laws are being observed.
47 O.S. 2-117(9) (1998) (emphasis added).
¶ 2 In essence, you question whether that portion of 47 O.S.2-117(9) (1998) dealing with authority to stop and inspect the contents of a motor vehicle, authorizes a stop which would constitute an unreasonable search or seizure under theFourth Amendment to the United States Constitution[1] or its state equivalent, Article II, Section 30 of the Oklahoma Constitution.[2] In issues dealing with criminal liability, the Oklahoma Court of Criminal Appeals has held that Art. II, 30, is to be analyzed in the same manner as the Fourth Amendment.Langham v. State, 787 P.2d 1279, 1281 (Okla.Crim.App. 1990);Long v. State, 706 P.2d 915, 916-17 (Okla.Crim.App. 1985);DeGraff v. State, 103 P. 538, 542 (Okla. 1909).[3]
Therefore, the analysis which follows is applicable to both constitutional provisions.
¶ 3 It is best to begin with some fundamental principals of constitutional analysis. In deciding a statute's constitutionality, the entity reviewing the statute begins with the presumption a legislative act is constitutional, and the statute will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution. See Reherman v. OklahomaWater Resources Bd., 679 P.2d 1296, 1300 (Okla. 1984). A party seeking to rebut the presumption of constitutionality must show the legislative act is "clearly, palpably and plainly inconsistent with the Constitution"; otherwise, it will be upheld. Id. Put another way, statutes will be held constitutionally valid "unless they are shown beyond a reasonable doubt to violate the Constitution." City of Bethany v. Pub.Employees Relations Bd. of Oklahoma, 904 P.2d 604, 613 (Okla. 1995). Additionally, a reviewing court has an obligation to interpret a statute to make its application constitutional rather than unconstitutional. See Unit Petroleum Co. v. Oklahoma WaterResources Bd., 898 P.2d 1275, 1277 (Okla. 1995).
 I. WARRANT REQUIRED
¶ 4 As the constitutional provisions themselves state, the core protection is the warrant requirement. As a general rule,
 [S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well delineated exceptions." The exceptions are "jealously and carefully drawn," and there must be a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative." (T)he burden is on those seeking the exemption to show the need for it.
¶ 5 Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971),overruled in part on other grounds, Horton v. California,496 U.S. 128 (1990) (footnotes omitted). Therefore, if an officer would not be endangered by foregoing a search until a warrant is obtained, or if there is no danger that the evidence would be destroyed, then a warrant based on probable cause must be obtained prior to the search. See Whitehead v. State,546 P.2d 273, 275 (Okla.Crim.App. 1976). The remainder of this opinion operates under the assumption no warrant has been obtained.
 II. WARRANT NOT REQUIRED
¶ 6 The statute in question articulates the ability of an officer to do two things pertaining to motor vehicles: stop and inspect. Legal grounds for a stop will be examined first.
A. Stop
¶ 7 An investigatory stop not rising to the level of an arrest does not run afoul of the Fourth Amendment if supported by reasonable suspicion. See Terry v. Ohio, 392 U.S. 1 (1968). This so-called Terry stop, based on the principle an investigative stop is permissible under the Fourth Amendment if an officer has reasonable suspicion, has been extended to automobiles. See United States v. Cortez, 449 U.S. 411 (1981);see also Adams v. Williams, 407 U.S. 143, 145-46 (1972). "Reasonable suspicion" has been defined as "a particularized and objective basis" for suspecting the person stopped is engaged in criminal activity. Cortez, 449 U.S. at 417418. The phrase entails some minimal level of objective justification for making a stop. That is, it must be something "more than an inchoate or unparticularized suspicion, or a `hunch,'" United States v.Sokolow, 490 U.S. 1, 7 (1989). (citations omitted). However, "the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause." Id. Probable cause is required for a search, as discussed below.
¶ 8 A peace officer also has the authority to stop a vehicle for a violation of the law, such as a traffic violation, which is conducted in his presence. See 47 O.S. 2-117(2) (1998); 22O.S. 196 (1998). In such instances, the stop is valid because probable cause is present. A search incident to arrest without a warrant is allowed under such circumstances.
¶ 9 There is one type of stop which can be conducted without any particularized suspicion at all: the roadblock. Constitutionality the roadblock, or checkpoint, has been upheld for both permanent roadblocks, United States v.Martinez-Fuerte, 428 U.S. 543, 561 (1976), and temporary ones. The sole issue in Michigan Dep't. of State Police v. Sitz,496 U.S. 444 (1990) was whether a state's use of highway sobriety checkpoints violated the Fourth and Fourteenth Amendments to the United States Constitution. The Court held it did not. In that decision, the director of the Michigan State Police had appointed a sobriety checkpoint advisory committee to create guidelines setting forth procedures governing checkpoint operations, site selection, and publicity. All vehicles passing through the checkpoint would be stopped and their drivers briefly examined for signs of intoxication. If the checkpoint officer detected signs of intoxication, the motorist would be directed to a location out of the traffic flow where an officer would check the motorist's driver's license and car registration. If warranted, the officer would conduct further sobriety tests. Should the field tests and the officer's observations suggest the driver was intoxicated, an arrest would be made. All other drivers would be permitted to resume their journey immediately.
¶ 10 Upholding the constitutionality of the procedure, the Supreme Court emphasized that when a vehicle is stopped at a checkpoint, a Fourth Amendment "seizure" occurs. Id. at 450. The question then becomes whether Utilizing a well-established test, the Court balanced the degree to which the seizure advanced the public interest against the relatively small measure of intrusion present when a motorist is stopped briefly. The Court saw virtually no constitutional difference between the levels of intrusion on law-abiding motorists from the brief stops necessary to the effectuation of DUI checkpoints and those for illegal aliens in Martinez-Fuerte. See Sitz 496 U.S. at 451-52.
¶ 11 This holding was premised on the underlying assumption that each motorist approaching the checkpoint was treated the same, Sitz, 496 U.S. at 451, and that there were "appropriate limitations on the scope of the stop." Martinez-Fuerte,428 U.S. at 567. At the point where a particular driver may be singled out and examined further, such examination "may require satisfaction of an individualized suspicion standard." Id. at 451. The Oklahoma Court of Criminal Appeals has also upheld the temporary roadblock concept. See Brantley v. State,548 P.2d 675, 676 (Okla.Crim.App. 1976) (defendant was stopped at a nonselective wholesale driver's license and safety check by a roadblock, at which time marijuana was found and the defendant was arrested. The court held such a roadblock was proper, and the evidence need not be suppressed).[4]
¶ 12 The same could be said in this instance. An officer acting under 47 O.S. Supp. 1998, 2117(9) could conceivably effect a suspicionless stop, provided the policy behind the stops demonstrates a "great" need, Martinez-Fuerte, 428 U.S. at 557
(such as to check for driver sobriety), and certain departmentally-approved procedures designed to advance that need are scrupulously followed to allow only the minimal intrusion of the stop itself. However, a checkpoint will not withstand constitutional scrutiny if the need is not great. At the point any particular driver or vehicle is singled out for further examination, there must be some indicia of individualized suspicion to justify the further intrusion. In other words, a stop without individualized suspicion may be permissible, if the government could demonstrate a "great" need; otherwise, the officer must have "reasonable suspicion" to effect the stop. Whether such levels exist depend on facts that are outside the scope of an Attorney General's Opinion. See 74 O.S. 18b(5) (1998).
B. Search
¶ 13 Once the car is stopped, the officer must then consider whether he has grounds to search it.[5] A warrantless search of a car can be valid, under certain circumstances.
¶ 14 One "carefully drawn" exception to the warrant requirement was set forth in Carroll v. United States, 267 U.S. 132 (1925). To have a valid warrantless search of a motor vehicle, however, the two concepts of exigency and probable cause must coalesce. "Probable cause" exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."Ornelas v. United States, 517 U.S. 690 (1996). The Supreme Court has not specifically defined "exigent circumstances," but it has observed that an exigency "arises from the dangers of harm to the arresting officer and of destruction of evidence within the reach of the arrestee." Coolidge, 403 U.S. at 478. Indeed, the Carroll exception is based on the fact that the ready mobility of a motor vehicle presents a great risk of imminent disappearance, thus making a warrant requirement impracticable.See Carroll, 267 U.S. at 153.[6]
¶ 15 Probable cause can be found by the plain view exception. Once a vehicle is lawfully stopped, if an officer observes fruits of a crime, he is entitled to search further, provided exigent circumstances are present. As the Court noted in Cheatham v.State, 483 P.2d 1172, 1175 (Okla.Crim.App. 1971), observing articles in plain sight is not a search, but rather consists of "information furnishing probable cause coming freely to the officer without a search." See also Eberhardt v. State,614 P.2d 78, 79 (Okla.Crim.App. 1980) ("In the instant case, the officer was in a place where he had a right to be when he observed the bottle of liquor and bag of marihuana, in plain view. It would be foolish indeed to require him to leave the automobile unattended in the parking lot, go before a magistrate and file an affidavit for a search warrant, and then return with the warrant, hoping that some passer-by had not disturbed the car and contents in the interim.").
¶ 16 Similarly, a limited search incident to an arrest is permissible. In Mahas v. State, 508 P.2d 703, 707
(Okla.Crim.App. 1973), the Court of Criminal Appeals held that where a person is legally arrested for an offense, without a warrant, whatever is found upon his person or within his control may be seized and held for evidence in the prosecution. The court further stated that the officer may lawfully search the person and the immediate surroundings of the accused for the fruits of the crime or to secure evidence which might have been used in the perpetration of the alleged crime. This same rationale applies if the person arrested is in an automobile. See New York v.Belton, 453 U.S. 454, 460 (1985). However, a search incident to a warrantless arrest is invalid when the person is arrested on mere suspicion of unlawful conduct. See Graham v. State,447 P.2d 200 (Okla.Crim.App. 1968).
¶ 17 The arrest must be a custodial arrest as well, and not a mere traffic stop where a citation is issued and the driver is allowed to go on his way. This was made clear in a recent Supreme Court case, Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484,142 L. Ed.2d 492 (1998), a case dealing with the scope and ability to conduct a search incident to arrest. There, an Iowa law enforcement officer stopped the defendant for a minor traffic violation and issued a citation (the defendant was not subjected to custodial arrest because Iowa law, like Oklahoma's, allows for the issuance of a citation in lieu of continued custody after the initial stop). Relying on an Iowa statute that allowed a search of a stopped vehicle even without consent or probable cause, the officer searched the vehicle and found drugs. The defendant was arrested based on this search.
¶ 18 The Knowles Court overturned the conviction. Writing for a unanimous Court, Chief Justice Rehnquist noted that the rationale for allowing a warrantless search incident to arrest was not present in a traffic case, where the "threat to officer safety from issuing a traffic citation . . . is a good deal less" than when a custodial arrest is made, id. at ___,119 S.Ct. at 487, because a traffic stop is a "relatively brief encounter and `is more analogous to a so-called Terry stop. . . . . than to a formal arrest.'" Id. at ___, 119 S.Ct. at 488 (quotingBerkemer v. McCarty, 468 U.S. 420, 437 (1984)). The Court differentiated between a search authorized by the statute and the ability of an officer to order people out of a vehicle. Under a traffic stop, an officer may justify minimal intrusion by ordering people out of a vehicle; however, this rationale does not extend to allowing a "greater intrusion attending a full field-type search." Id. at ___, 119 S.Ct. at 488.
¶ 19 There is another exception to a warrant requirement. Inventory searches which are conducted pursuant to standardized impoundment procedures do not violate either the Fourth Amendment or Article II, Section 30 of the Oklahoma Constitution. SeeSouth Dakota v. Opperman, 428 U.S. App. 1976). See also Hall v.State, 766 P.2d 1002, 1004 (Okla Crim. 1988). There are restrictions on such a search, however. An inventory search must be grounded upon the need to impound the vehicle. See Hall,766 P.2d at 1004. The impoundment procedure must be conducted according to the authority of a municipal ordinance, or as a requirement of police department regulations. See Starks v.State, 696 P.2d 1041, 1042 (Olda. Crim. App. 1985). As noted inStarks, the inventory search "is a constitutionally reasonable intrusion only because it is conducted pursuant to regularized policy or law. This standardization eliminates those dangers to personal liberty engendered by proceeding without a warrant or probable cause."
¶ 20 In summary, then: an officer acting under 47 O.S.2-117(9) (1998) could conceivably effect a suspicionless stop, provided the policy behind the stops demonstrates a "great" need,see Martinez-Fuerte, 428 U.S. at 557 (such as to check for driver sobriety), and certain departmentally-approved procedures designed to advance that need are scrupulously followed to allow only the minimal intrusion of the stop itself. However, a checkpoint will not withstand constitutional scrutiny if the need is not great. Further, at any point a particular driver or vehicle were singled out for further examination, there must be some indicia of individualized suspicion to justify the further intrusion. In other words, a stop without individualized suspicion may be permissible, if the government could demonstrate a "great" need; otherwise, the officer must have "reasonable suspicion" to effect the stop.
¶ 21 In either case, a search without probable cause would not be constitutionally permissible. A warrantless search of an automobile can be conducted, provided both probable cause and exigent circumstances exist. If a driver is arrested, a search of the automobile can be conducted incident to that search, and an inventory search can be conducted if established procedures are in place and circumstances indicate the vehicle must be impounded. Additionally, if the initial stop is valid and the officer sees evidence of a crime in plain view, that provides probable cause and a search pursuant to that plain view can be conducted.
¶ 22 As it is our duty to interpret the statute in a way which is consistent with the constitutional principles stated above, we can say that 47 O.S. 2-117(9) (1998) is constitutional, so long as to justify the stop: (1) an officer has some reasonable suspicion a vehicle stopped is being used in criminal activity to justify stopping it, or (2) the officer or department can demonstrate a great need for establishing a suspicionless stop of every motor vehicle which passes by. If the stop is valid, the officer can "inspect" or search the contents of the vehicle provided exigent circumstances exist and (1) a valid custodial arrest is made, and a search incident to that arrest is conducted; (2) a valid custodial arrest is made, and the vehicle must be impounded; and (3) evidence in plain view of the officer indicates a crime is being committed; and so long as the officer can demonstrate both probable cause and exigent circumstances to "inspect the contents" to determine if the provisions of all general laws are being observed.
¶ 23 Whether any particular stop or search is reasonable under the Fourth Amendment is heavily dependent on the facts of the individual case, Ornelas, 116 S.Ct. at 1661, and would therefore be outside the scope of an Attorney General Opinion.74 O.S. 18b(5) (1998).
¶ 24 Therefore, in the absence of facts specific to each case, or legal authority to rebut the presumption of constitutionality, Section 47 O.S. 2-117(9) of Title 47 is constitutional, but limited by the constitutional requirements of theFourth Amendment and Article II, Section 30 governing unreasonable searches and seizures.
¶ 25 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Section 2-117 of Title 47, which seemingly provides an officerof the Highway Patrol authority to "stop and inspect the contentsof all motor vehicles to ascertain whether or not the provisionsof all general laws are being observed," is limited by theconstitutional requirements of the Fourth Amendment to theUnited States Constitution and Article II, Section 30 of the OklahomaConstitution, which prohibit unreasonable searches and seizures.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA DAN CONNALLY ASSISTANT ATTORNEY GENERAL
[1] That amendment reads:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
[2] That section, virtually identical to the federal constitutional provision, reads:
 The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized.
[3] The Oklahoma Supreme Court in Turner v. City of Lawton,733 P.2d 375, 377-82 (Okla. 1986), cert. denied, 483 U.S. 1007
(1987), held that evidence seized in violation of Article II, Section 30 of the Oklahoma Constitution is inadmissible in a subsequent civil administrative personnel proceeding. TheTurner Court, therefore, extended the scope of the exclusionary rule in the context of a civil administrative proceeding by interpreting Article II, Section 30 as providing greater protection to the citizens of Oklahoma than is provided by theFourth Amendment, which does not dictate exclusion in a civil administrative personnel proceeding. Your question deals not with the exclusionary rule, but rather whether a search authorized by this section is unconstitutional, which would subsequently invoice the exclusionary rule as a remedy. Consequently, the dichotomy between the two courts, for purposes of answering your question, is immaterial.
[4] There is one case from the Court of Criminal Appeals which seems to contradict this. In State v. Smith, 674 P.2d 562
(Okla.Crim.App. 1984), that court held a temporary roadblock to detect those driving under the influence of alcohol or drugs was an unreasonable seizure of the person when done without any articulable facts giving rise to a reasonable suspicion for the stop. The Smith court relied heavily on the rationale inMartinez-Fuerte, which was limited to permanent roadblocks, and concluded the rationale present to support permanent roadblocks did not support temporary roadblocks to check for DUIs. However, in light of the Supreme Court Sitz decision, it is unlikelySmith is still good law; and if the Oklahoma court follows its own precedents of interpreting Article II, Section 30 in the same manner as the Fourth Amendment, it likely would overrule Smith
should the issue come before the court again.
[5] This opinion operates under the assumption the statutory phrase "inspect the contents" is synonymous with a search. SeeOklahoma Alcoholic Beverage Control Bd. v. McCulley,377 P.2d 568, 570 (Okla. 1962) The right to "inspect" and the right to "search" were indistinguishable under the Liquor Control Act provision that a search warrant was not necessary for duly authorized agents of the alcoholic beverage control board to enter upon and inspect licensed premises).
[6] However, if there are no exigent circumstances present, a warrant for an automobile is required, see State v. Edwards,311 P.2d 266, 269 (Okla.Crim.App. 1957), as probable cause alone will not justify a warrantless search. See Blackburn v.State, 575 P.2d 638, 642 (Okla.Crim.App. 1978). As the Court in Coolidge observed, "[t]he word `automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." Coolidge, 403 U.S. at 461.