Dear Representative Cargill,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Does 2004 Okla. Sess. Law Serv. ch. 195, § 1 ("H.B. 2145"), which creates the Advancement of Hispanic Students in Higher Education Task Force, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by requiring a majority of the members of the Task Force to be Hispanic?
¶ 1 The 2004 Okla. Sess. Law Serv. ch. 195, § 1 (to be codified at 70 O.S. Supp. 2004, § 3242.1[70-3242.1]) (hereinafter "H.B. 2145 ") creates the Advancement of Hispanic Students in Higher Education Task Force ("Task Force"). The purpose of the Task Force is, among other things:
 1. To monitor the implementation and administration of the policy required in Section 3242 of Title 70[1] of the Oklahoma Statutes for resident tuition for certain students enrolled in an institution within The Oklahoma State System of Higher Education; and
 2. To study, report and make recommendations on the issues involving recruitment, retention, and completion of Hispanic students in higher education in Oklahoma.
2004 Okla. Sess. Law Serv. ch. 195, § 1(B) (to be codified at 70O.S. Supp. 2004, § 3242.1[70-3242.1](B)) (footnote added). House Bill 2145 also provides that "[a] majority of the appointed members [to the Task Force] shall be Hispanic." Id. § 1(C).
¶ 2 The Supreme Court of the United States recently reiterated that "all `governmental action based on race-a group
classification long recognized as in most circumstances irrelevant and therefore prohibited-should be subjected to detailed judicial inquiry to ensure that the personal right to equal protection of the laws has not been infringed.'" Grutterv. Bollinger, 539 U.S. 306, 326 (2003) (quoting AdarandConstructors, Inc. v. Peña, 515 U.S. 200, 227 (1995)). The Court further explained that "`[a]bsent searching judicial inquiry into the justification for such race-based measures,' we have no way to determine what `classifications are `benign' or `remedial' and what classifications are in fact motivated by illegitimate notions of racial inferiority or simple racial politics.'" Id. (quoting Richmond v. J.A. Croson Co.,488 U.S. 469, 493 (1989) (plurality opinion)). Accordingly, strict scrutiny applies "to all racial classifications to' `smoke out' illegitimate uses of race by assuring that [government] is pursuing a goal important enough to warrant use of a highly suspect tool.'" Id. (alteration in original) (quoting J.A.Croson Co., 488 U.S. at 493). To withstand strict scrutiny, a racial classification must be narrowly tailored to further compelling governmental interests. Id.
¶ 3 Additionally, the Court has explained while persons may "have no right to be appointed to [public office, they] . . . do have a federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications. The State may not deny to some the privilege of holding public office that it extends to others on the basis of distinctions that violate federal constitutional guarantees."Turner v. Fouche, 396 U.S. 346, 362 (1970) (footnotes omitted). Accordingly, strict scrutiny applies to H.B. 2145's requirement that the majority of the Task Force's members be Hispanic.
¶ 4 In Grutter the Court pointed out that, "[a]lthough all governmental uses of race are subject to strict scrutiny, not all are invalidated by it." Grutter, 539 U.S. at 326-27 ("Context matters when reviewing race-based governmental action under the Equal Protection Clause."). Grutter found that "use of race in the context of public higher education" is justified by a compelling state interest, because of the "important purpose of public education and the expansive freedoms of speech and thought associated with the university environment." Id. at 328, 329.
¶ 5 In evaluating H.B. 2145, a court could find that the state has a sufficiently compelling interest in improving the recruitment, retention, and completion of Hispanic students in higher education in Oklahoma to justify a race-conscious method of selecting members of the Task Force. A court could also determine that the state has a compelling interest in creating a Task Force whose members could readily understand and address issues that affect Hispanic student achievement in higher education, in ensuring that the Task Force is staffed with members who have first-hand knowledge of the ways Hispanic culture and community affect Hispanic student advancement in higher education, and in fostering the public perception that the Task Force is properly constituted to achieve those state interests.
¶ 6 A court could also find that mandating that a majority of the Task Force members be Hispanic is the least restrictive means of meeting the sufficiently compelling interest the state may assert for justifying its race-conscious method of selecting Task Force members.
¶ 7 Because "context matters" and strict scrutiny "must not be applied out of context in disregard of variant controlling facts," whether H.B. 2145's requirement that a majority of the Task Force's members be Hispanic satisfies strict scrutiny includes questions of fact outside the scope of an Attorney General's Opinion. Grutter, 539 U.S. at 327 (quotingGomillion v. Lightfoot, 364 U.S. 339, 343-44 (1960)); 74O.S. 2001, § 18b[74-18b](A)(5). Additionally, there is a strong presumption which favors the constitutionality of legislative acts. Reherman v. Okla. Water Res. Bd., 679 P.2d 1296, 1300
(1984). A statute will be upheld "unless it is clearly and plainly inconsistent with the Constitution." Fraternal Order ofPolice, Lodge No. 165 v. City of Choctaw, 933 P.2d 261, 266
(1996) (citing Reherman, 679 P.2d at 1300).
¶ 8 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The Advancement of Hispanic Students in Higher Education Task Force, 2004 Okla. Sess. Law Serv. ch. 195, § 1 (to be codified at 70 O.S. Supp. 2004, § 3242.1) ("H.B. 2145"), does not, on its face, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, because such a determination includes questions of fact outside the scope of an Attorney General's Opinion, and because there is a strong presumption that legislative acts are constitutional. 74 O.S. 2001, § 18b(A)(5); Reherman v. Okla. Water Res. Bd., 679 P.2d 1296, 1300 (1984).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 JOANN T. STEVENSON Assistant Attorney General
[1] Title 70, Section 3242 of the Oklahoma Statutes permits a student without lawful immigration status to be eligible for resident tuition if the student files an affidavit stating that the student has an application pending to legalize his or her status or intends to file such an application as soon as possible. Id. § 3242(B)(2).