BOARD OF COMR'S OF MARSHALL COUNTY v. SHAW, State Auditor, et al. (BOARD OF COM'RS OF BRYAN COUNTY et al., Interveners).

No. 32810.  June 3, 1947.

Rehearing Denied July 1, 1947.

*182 P. 2d 507.*

Victor C. Phillips, Co. Atty., of Durant, and O. C. Barnes, Co. Atty., and Welch & Welch, all of Madill, for petitioner and interveners.

Mac. Q. Williamson, Atty. Gen., and James C. Harkin, Asst. Atty. Gen., for respondents.

OSBORN, J. This is a petition invoking the original jurisdiction of this court, for a writ of mandamus by the board of county commissioners of Marshall county, filed on October 1, 1946, and on October 14, 1946, respondents C. C. Childers, State Auditor, and A. S. J. Shaw, State Treasurer, filed their response. Thereafter, on application duly granted, the board of education of school district No. 5, Marshall county, and the board of education of school district No. 3, Marshall county, each claiming an interest in the funds sought to be recovered by petitioner, and the board of county commissioners of Bryan county, which asserted a claim similar to that of petitioners, were permitted to intervene. Each of the interveners adopted the petition filed by petitioner. Thereafter A. S. J. Shaw, the present State Auditor, and John D. Conner, the present State Treasurer, were substituted as parties defendant.

In its petition for the writ, petitioner alleged that in the year 1916, the state, acting through its Board of Public Affairs, acquired title to certain lands located in Marshall county, more particularly described in an exhibit attached to the petition as exhibit "B", for use as a farm in connection with the operation of the Oklahoma State Prison, which farm was known as the Aylesworth Prison Farm; that said real estate was acquired by direct negotiation with the then owners of the lands, and warranty deeds issued and delivered to the state conveying said lands to it; that ad valorem taxes for several years prior to the date the state acquired title were delinquent and unpaid on all of said real estate, and that the state paid to the owners the entire consideration for said lands without regard to the payment of said delinquent taxes, and that it did not pay such taxes nor require the then landowners to pay them.

The petition further recites that thereafter, in 1925, pursuant to Senate Joint Resolution No. 18 of the 1925 Legislature (S.L. 1925, p. 324), the Board of Affairs was authorized to divide said Prison Farm into tracts and offer the tracts for sale upon installment contracts; that said resolution provided for the assessment of said tracts for ad valorem taxes, and the payment of taxes by the holders of such contracts of purchase; that the Board of Affairs proceded to dispose of said lands in the manner directed by said joint resolution, but that the holders of said contracts of purchase did not pay their annual installments of the purchase price, and that ad valorem taxes against said lands for the years 1926 up to and in-

cluding 1942 were not paid; that in 1941, pursuant to authority granted by Title 57, c. 4a, S.L. 1941, p. 226, the Board of Affairs instituted actions in the district court of Marshall county to foreclose the lien of the State of Oklahoma created by the contracts of purchase above mentioned; that said actions were prosecuted to conclusion and the real estate sold at sheriff's sale to John Marshall, and that all the proceeds of said sheriff's sale were delivered to the state and applied to the amount due the state under the contracts of purchase.

The petition further recites that in 1942 the state, acting through the Board of Public Affairs, ordered and directed the county treasurer of Marshall county to cancel all assessments for ad valorem taxes made against said real estate for the years 1908 to 1942, inclusive, and that upon the advice, written opinion, recommendation and direction of the State Examiner and Inspector and the Attorney General of the State of Oklahoma, the county treasurer canceled all of said assessments for ad valorem taxes, and that such action so taken resulted in the cancellation of taxes legally assessed against said real estate and due to Marshall county and its municipal subdivisions in the sum of $14,861.23.

That thereafter Senate Joint Resolution No. 12, S. L. 1945, p. 476, appropriated the sum of $20,000 for the purpose of reimbursing Marshall county for and on account of the taxes so canceled, and that thereafter, on May 7, 1946, the county treasurer of said county filed his claim with the Board of Affairs in the sum above mentioned, which claim was duly audited and approved by the Board of Affairs and filed with the respondent C. C. Childers, State Auditor, and that the said Auditor has failed, neglected and refused and still refuses to audit and allow said claim, and that respondent State Treasurer has failed, neglected and refused and still refuses to pay any warrant drawn in payment of said claim.

The petition further alleges that the State Examiner and Inspector has examined the tax rolls of Marshall county as required by section 2 of said Joint Resolution No. 12, and has filed a report thereof with the county treasurer of Marshall county, and with the Board of Affairs as required by said joint resolution, showing separately each tract of land and the amount of taxes delinquent and unpaid upon each tract for the years 1908 to 1942 exclusive of the years when the fee-simple title was in the State of Oklahoma, but including taxes due and unpaid on the date the state acquired title, and taxes canceled pursuant to the order of the Board of Affairs, as above set forth; that a copy of said report was attached to the claim delivered to the respondent, State Auditor, and a copy is attached to the petition herein.

The petition further alleges that the respondents refuse to audit and allow said claim on the ground and for the reason that Joint Resolution No. 12, passed by the 1945 Legislature, is violative of the Constitution of the State of Oklahoma. It prays that this court issue a writ of mandamus requiring respondent State Auditor to audit and allow petitioner's claim, and to issue a warrant in payment thereof, and requiring the respondent, State Treasurer, to pay said warrant so issued.

The response filed by respondents to said petition alleges that the petition fails to state facts sufficient to entitle petitioner to the relief prayed for; that when the state acquired the lands referred to in said petition, said lands became exempt from ad valorem taxes, and were absolved and relieved from liability from delinquent ad valorem taxes theretofore assessed against them, and from any taxes thereafter assessed against same while the legal and equitable title remained in the state; that there was no obligation upon the state or any of its agents or employees to pay any ad valorem taxes theretofore assessed, or attempted to be assessed,

against said lands; that when the lands were sold by the State Board of Affairs pursuant to authority granted by Senate Joint Resolution No. 18, S.L. 1925, p. 324, the Board of Affairs was required to deposit all money received from such sale in the State Treasury to the credit of the general revenue fund, and that when said lands were sold pursuant to the provisions of said act they became subject to ad valorem taxes for subsequent years regardless of whether or not they were placed on the tax records or any assessments entered against them; that said contracts of sale provided that upon the default in payment of any installment of principal or interest of the purchase price the State Board of Affairs should have the right to cancel the contract of purchase and declare the same forfeited, and that when any lands covered by such contract were sold to John Marshall at sheriff's sale, as alleged in petitioner's petition, the status of said lands as to taxability, and liability as to sale for taxes assessed after the execution and delivery of such contracts, remained unchanged and unaffected by the foreclosure actions or sale, and that there was no obligation upon the state, or its agents, to pay said taxes, or to see that they were paid; that if the county treasurer of Marshall county made any entry upon the tax records of said county purporting to cancel any taxes assessed against any tract so sold for any year subsequent to the issuance of such sales contract by the State Board of Affairs, that such entry of cancellation was erroneous and ineffective and did not relieve the lands of liability for such taxes, and that Senate Joint Resolution No. 12, S. L. 1945, p. 476, does not purport to authorize payment of any amount to reimburse Marshall county for any taxes remaining uncollected against lands so sold, and that the payment of any such taxes under said law would not be a payment made for a public purpose, but would constitute a gift of public funds of the state to the present owners of said land contrary to sections 14 and 15 of art. 10, of the Constitution of this state.

Respondents further allege that Senate Joint Resolution No. 12 is not a law within the meaning of section 55, of art. 5, of the Constitution, providing that no money shall ever be paid out of the treasury of this state nor any of its funds nor any of the funds under its management except in pursuance of an appropriation by law; that it is contrary to section 56, of art. 5, of the Constitution, in that they assert that an appropriation can be made only by bill, and not by resolution, and that it violates section 59, of art. 5, which provides that laws of a general nature shall have a uniform operation throughout the state, and that where a general law can be made applicable no special law shall be enacted. They assert that said resolution is a special or local law, and that notice of the intended introduction of said resolution was not published, as required by section 32, of art. 5, of the Constitution, which notice was essential to the validity of a special law, even if a special law could be legally enacted for such purpose.

Respondents further allege that the primary purpose of such joint resolution is to compensate Marshall and Bryan counties for loss in revenue from ad valorem taxes, and to re-establish the credit of such counties and their governmental subdivisions to the extent that such credit was impaired by deficits in estimated income resulting from the cancellation of ad valorem taxes unpaid at the time title to the lands in question was acquired, or reacquired, by the state, which purpose is contrary to the provisions of sections 14 and 15, of art. 10 of the Constitution, which inhibit the levying of taxes except for public purposes; prohibit the state from assuming the debt of any county unless such debt shall have been contracted to defend itself in time of war, repel invasion or suppress insurrection; prohibit the giving, pledging or loaning the credit of the state to any individual,

company, municipality or political subdivision of the state, and prohibit the making of any gift to any company, association or corporation.

The petitions in intervention of the board of education of school district No. 3 and the board of education of school district No. 5 of Marshall county state that they have an interest in the claim sued upon by Marshall county. The intervener board of county commissioners of Bryan county asserts a claim of $344.24, identical in all respects with the Marshall county claim except for the difference in amount and in the lands involved, in that the claim covers taxes due upon lands which are located in Bryan county embraced in said Prison Farm. It appearing that the claims are in all respects essentially identical so far as the questions presented are concerned, the claims of the school districts and of Bryan county will not be separately discussed, and the rights of petitioners, if any, will be taken to extend to and include the interveners.

That a statute enacted by the Legislature is presumed to be constitutional, and that the burden of showing that it is unconstitutional rests upon the party asserting it, is a rule of universal application. 12 C.J. 791, § 221; City of Pond Creek v. Haskell, 21 Okla. 711, 97 P. 338.

Respondents contend that the joint resolution is not a law within the meaning of section 55, of art. 5, of the Constitution, prohibiting the payment of money out of the State Treasury except in pursuance of an appropriation by law. In support of this contention they rely upon Hawks v. Bland, 156 Okla. 48, 9 P. 2d 720, and Wright v. Carter, 161 Okla. 281, 18 P. 2d 522. In Wright v. Carter reliance was placed upon the opinion in Hawks v. Bland, and there was no discussion of the question in the opinion.

In Hawks v. Bland the opinion stated that a bill and a resolution of the Legislature were entirely different in their

creation, nature and purpose, and that a resolution was ordinarily passed without compliance with the forms and limitations which are generally required by the Constitution as prerequisites to the enactment of valid laws, citing authorities from other states. It further stated that if the resolution considered in that case had the standing and dignity of a law, it was a special law, and unconstitutional unless advertised as required by section 32, art. 5, of the Constitution.

In Ward v. State, 176 Okla. 368, 56 P. 2d 136, we re-examined the question, and held that a joint resolution passed by the Legislature in conformity with sections 34 and 35 of art. 5, of the Constitution, had the force and effect of a valid enactment, when all of the constitutional requirements were observed. In that case we did not expressly overrule the decision in Hawks v. Bland, but stated that the expressions of the court in that case and the authorities referred to therein indicated that the resolution there considered was not enacted with the formalities required by sections 34 and 35, art. 5, of the Constitution, while the resolution considered in Ward v. State, supra, was so enacted. The resolution under consideration therein did not appropriate money, and the case of Hawks v. Bland was, therefore, distinguished. If, as decided in Ward v. State, supra, a joint resolution, when passed in conformity to sections 34 and 35, art. 5, and duly approved by the Governor as required by section 11, art. 6, of the Constitution, is a law within the meaning of the constitutional provisions, the question is presented whether an appropriation made by such law is valid.

Section 56, art 5, of the Constitution, in reference to appropriations provides as follows.

"The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the State, and for interest on the public

debt. . . . All other appropriations shall be made by separate bills, each embracing but one subject."

Standing alone and without consideration of other constitutional provisions it might well be said that said section requires all appropriations to be made by bill. But, when considered with the language of other sections of the Constitution, it is apparent that the term "bills" referred to and meant the same thing as laws or acts; that it was a general term and not exclusive. This for the reason that throughout the Constitution the terms "bills", "acts", "laws",, "enactments", "resolutions" and "measures" all frequently denote the same thing.

Section 55, art. 5, provides that no money shall ever be paid out of the treasury of the state, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation made by *law*. Section 57, art. 5 provides that every *act* shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation *bills, general revenue bills,* and bills adopting a code, digest, or revision of statutes; that no *law* shall be revived or amended by reference to its title only, and that if any subject be embraced in any *act* contrary to the provisions of the section, said *act* shall, to that extent, be void. Section 58, art. 5, provides that no *act* shall take effect until 90 days after the adjournment of the session at which it was passed, except *enactments* for carrying into effect provisions relating to the initiative and referendum, or a general appropriation bill, unless in case of emergency the Legislature so directs. It further provides that emergency *measures* shall include only such as are immediately necessary for the preservation of the public peace, health or safety, and that emergency *measures* may be vetoed by the Governor. Section 59, art. 5, provides that laws of a general nature shall have a uniform operation throughout the state. Sec-

tion 14, art. 10, provides that taxes shall be levied and collected by *general laws*. Section 16, art. 10, provides that all *laws* authorizing the borrowing of money shall specify the purpose for which the money is to be used. Section 19, art. 10, provides that every *act* enacted by the Legislature levying a tax shall specify distinctly the purpose for which said tax is levied, and section 20, art 10, provides that the Legislature may by general *laws* confer on the proper authorities of counties, cities, and other municipal corporations the power to assess and collect taxes.

Article 6, § 11, provides that "every *bill* . . . and every resolution . . . shall, before it becomes a *law,* be presented to the Governor". In event he fails to approve it, the section further provides for a reconsideration thereof by the Legislature, and "if approved by two-thirds of the members elected to that house, it shall become a law . . . ". It further provides that "if any bill or resolution shall not be returned by the Governor within five days . . . the same shall be a *law* in like manner . . . unless . . . it shall not become a *law* . . . ".

When all these sections dealing with the enactment of laws by the Legislature are considered together, as they should be (12 C. J. 707, § 55) it is reasonably apparent that the terms "bills", "acts", "law", "measure", "resolution", and "enactment" were in many instances used synonymously, and that the provision in section 56, art. 5, that all other appropriations should be made by *separate bills,* was not intended to limit or restrict the power of the Legislature to make appropriations by *law* as provided in section 55, art. 5.

This has been the construction placed upon these provisions of the Constitution by the Legislature over a long period of time, and where the meaning of a constitutional provision is doubtful or open to question, when considered in connection with other provisions of the Constitution, the construction placed upon it by the Legislature is

entitled to great weight. 12 C. J. 714, § 66; State ex rel. Kerr v. Grand River Dam Authority, 195 Okla. 8, 154 P. 2d 946; Glasco v. State Election Board, 121 Okla. 119, 248 P. 642; Cornell v. McAllister, 121 Okla. 285, 249 P. 959.

Examination of the various Session Laws discloses that for a long period of time the Legislature has construed the constitutional provisions as authorizing appropriations by joint resolutions, usually in cases outside of and beyond the appropriation of funds for the maintenance of the state government and its regular institutions. Thus, in S. L. 1915, p. 698, the Legislature, by joint resolution, authorized the purchase of the Oklahoma State Hospital at Norman, and appropriated the sum of $100,000 for such purchase. In 1937, by joint resolution (S. L. 1937 p. 529), it appropriated the sum of $35,000 to provide a statue of the late Will Rogers, to be placed in the National Statuary Hall at Washington, D. C., and in the period of time intervening between the two instances cited numerous appropriations in varying amounts were made by joint resolution for purposes outside of the ordinary governmental affairs of the state.

From what we have said above it logically follows that if, as held in Ward v. State, supra, a valid law may be enacted by joint resolution, duly passed in accordance with the constitutional provisions, there is no good reason for holding such law invalid because an appropriation is therein made to carry out its purposes. To so hold would place a serious restriction upon the power of the Legislature, since, if it undertook to enact, by joint resolution, a law to remedy an unusual or extraordinary situation, or to achieve a result beneficial to the state, it would be required, if the expenditure of money was necessary to effect such purpose, to pass a separate appropriation bill in order to attain the desired result.

Respondents do not contend that Senate Joint Resolution No. 12, relied upon by petitioner, was not passed with all the formality prescribed by the various constitutional provisions relating to the passage and approval of laws, and we, therefore, assume, under the rule announced in Atchison T. & S. F. Ry. Co. v. State, 28 Okla. 94, 113 P. 921, that it was so passed. We, therefore, hold that said Senate Joint Resolution No. 12 is a law within the meaning of that term as used in our constitutional provisions, and that the appropriation made therein is one made pursuant to law and is valid. Hawks v. Bland, supra, and Wright v. Carter, supra, insofar as they are in conflict with what we have said above, are hereby overruled.

Respondents further contend that if it be held that Senate Joint Resolution No. 12 is a law within the meaning of sections 55 and 56, art. 5, of the Constitution, it is a special law, and that notice of its introduction not having been published, as required by section 32, art. 5, it is invalid; also that it violates section 59, art. 5, which provides that laws of a general nature shall have a uniform operation throughout the state, and that where a general law can be made applicable no special law shall be enacted. Petitioners concede that notice of the intended introduction of said joint resolution was not published as required by said section 32, but assert that the law is a general law and not special or local. We agree with the contention of petitioners, and think that the law is one of general application.

Senate Joint Resolution No. 12 relates to the disestablishment and liquidation of the Aylesworth Prison Farm, a state enterprise connected with and growing out of the operation of the state's penal institutions. The establishment of such farm, its operation and its liquidation upon the determination by the proper authority that it was no longer of use to the state as a part of its penal program, was and is a matter of state-wide concern. We have numerous times held that laws dealing with or affecting matters of state-wide concern,

or in whose object the state was concerned, were general laws, although they were applicable only in certain localities.

Thus, in Coyle v. Smith, 28 Okla. 121, 113 P. 944, we held that an act of the Legislature establishing the State Capitol at Oklahoma City was a general and not a special or a local law, citing various cases dealing with matters of state-wide concern although limited in scope and applicable to certain restricted areas.

In Sheldon v. Grand River Dam Authority, 182 Okla. 24, 76 P. 2d 355, we held that a statute creating a conservation district, including only a limited number of counties in a certain part of the state, was a general law, as the matter was one of state-wide concern.

In Foley v. State, 157 Okla. 202, 11 P. 2d 928, we held that a senate joint resolution authorizing the commissioners of highways to acquire a bridge over the South Canadian river connecting Pittsburg and McIntosh counties was a general law, since the building of public highways was not a matter affecting a particular locality and, therefore, the law pertained to a question in which the entire state was interested.

In Stephenson v. Wood, 119 Tex. 564, 34 S.W. 2d 246, the Supreme Court of Texas held that a law relating to the use of seines or nets for fishing in the waters of certain counties of the State of Texas was a general law although it affected, in its operation, only certain localities, saying:

"The statute operates upon a subject matter in which the people at large are interested; it applies with equal force to all persons everywhere; and the fact that it only operates in certain localities grows out of the subject matter."

In Kinney v. City of Astoria, 108 Ore. 514, 217 P. 840, the Supreme Court of Oregon held that a law appropriating money to the city of Astoria for the purpose of aiding it in reconstructing and replacing public buildings destroyed by fire was not a special or local law, since the reconstruction and replacing of such building was a matter of state-wide concern.

From the averments of the petition filed in this court it appears that the acquisition and liquidation of the Aylesworth Prison Farm was the subject of two or three legislative acts. If the provisions of Senate Joint Resolution No. 12 had been incorporated in the previous law authorizing the Board of Public Affairs to liquidate the project by the sale of lands acquired therefor, there could be no question but that the whole act, including the reimbursement of the county for taxes lost, would have been a general law, since it dealt exclusively with a state project. Although passed at different times, all of said laws related to but one subject, a state project, which was of concern to the entire state.

In Pawnee County Excise Board v. Kurn, 187 Okla. 110, 101 P. 2d 614, it was contended that taxes allocated to Pawnee county out of the vehicle license tax could not be used to retire bonds issued for the building of roads prior to the time the tax was received, it being argued that such use was for a purely local purpose and therefore violative of section 20, art. 10, of the Constitution, which provides that the Legislature should not impose taxes for the purpose of any county. In that case we said that it is well settled that the Legislature may levy a tax for a purpose in which the state has a sovereign interest, and that such interest extends to the construction and maintenance of roads. We further said:

"The debt is incidental to the purpose, and it will not be disputed that its purpose was one in which the state had a beneficial interest at the time it was created, and in the payment of which it now has such interest, for in the promotion of its payment by aid of the state, there is a promotion of the state's future interest in that there is or may be inducement for further roads by the same process."

In the instant case the reimbursement of the counties for taxes lost in the establishment and liquidation of a state enterprise is simply incidental to the establishment and liquidation thereof, and the interest of the state permeates and extends to the entire transaction. We hold that Senate Joint Resolution No. 12 does not violate section 59, art. 5, of the Constitution.

Respondents contend that the appropriation made in Senate Joint Resolution No. 12 was not made for a public purpose but was an assumption of debts of Marshall and Bryan counties in violation of section 14, art. 10, of the Constitution, or that it was a gift to said counties in violation of section 15, art. 10.

The term "public purpose" as used in section 14, art. 10, is not to be construed in a narrow and restricted sense. Pawnee County Excise Board v. Kurn, supra. In 51 Am. Jur. p. 373, section 326, it is stated that the term "public purpose" as used in constitutional provisions that taxes shall be levied for public purposes only, is synonymous with "governmental purposes", and means a purpose affecting the inhabitants of the state or taxing district as a community, and not merely as individuals. Therein the test as to whether the purpose of taxation is public is stated as follows:

"According to some authority, the true test of what is a public use for purposes of taxation is that 'which requires that the work shall be essentially public and for the general good of all the inhabitants of the taxing body. This does not mean, however, that a tax is not for a public purpose unless the benefits from the funds to be raised are to be spread equally over the whole community or a large portion thereof. A use may be public although it is of benefit primarily to the inhabitants of a small and restricted locality."

And, in Kinney v. City of Astoria, supra, it is stated that whether a tax is for a private or public purpose must be determined by the essential character of its direct object, and that where the direct object of the law therein involved was to aid the city in replacing public property and not to aid individuals, the money was appropriated for a public purpose.

Respondents seek to distinguish Los Angeles County v. Riley, 6 Cal. 2d 625, 59 P. 2d 139; Kinney v. City of Astoria, supra, and other cases holding that appropriations of money to specific portions of the state to assist in projects in which the state at large is interested is a use of the state's money for public purposes, pointing out that in the previous acts of the Legislature in connection with the establishment and liquidation of the State Prison Farm at Aylesworth, no provision was made for the repayment of taxes. But, as stated above, all of the acts relating to said state project, must be taken as component parts of legislation involving a matter of state-wide concern, and, therefore, held to be enacted for a public purpose.

As said in Cayuga County v. State, 153 N. Y. 279, 47 N. E. 288:

". . . What the Legislature did by the Act of 1882 it might have done at the time the state prisons were established, and from the first have made the expenses of the trial of convicts for crimes committed during their imprisonment a state, instead of a county charge. . . ."

If that procedure had been followed in this instance, no question could have been raised as to the appropriation being made for a public purpose. The reimbursement of the counties for the injury done to them by the manner in which the Prison Farm was liquidated was incidental to the liquidation thereof, and where the debt is incidental to the purpose, and the purpose of the various acts is a matter of state-wide concern, in which the state has a beneficial interest, an appropriation made therefor is for a public purpose. Pawnee County Excise Board v. Kurn, supra.

Section 20, art. 10, of the Constitution, provides that the Legislature shall not impose taxes for the purposes of any county, city, town, or other municipal corporation, yet we have repeatedly held that said section does not constitute a limitation upon the power of the state to impose taxes for purposes in which the state has a sovereign interest, although the character of such taxes may be municipal. General Motors Acceptance Corp. v. Hulbert, 190 Okla. 568, 125 P. 2d 975; Thurston, County Treas., v. Caldwell, 40 Okla. 206, 137 P. 683.

In Vette v. Childers, 102 Okla. 140, 228 P. 145, we pointed out the distinction between the appropriation of money for public purposes and private purposes, and said that to constitute a public purpose, as the term was used in section 14, art. 10, of the Constitution, such purpose must not only be affected with a public interest, but must be performed by the state in the exercise of its governmental functions. And, in Helm v. Childers, 181 Okla. 535, 75 P. 2d 398, we said that the meaning of public purposes, as the term was used in said section of the Constitution, was not to be confined to a narrow and restricted sense. We are of the opinion that the appropriation made by Senate Joint Resolution No. 12 was for a public purpose.

Being for such purpose and being incidental to the liquidation of a state project, it was clearly not a gift to the counties, nor was it an assumption of their debt. Rather it was a reimbursement to them which should have been provided for by the Legislature in its earlier acts relating to the establishment and liquidation of said project, and which provision undoubtedly would have been made by the Legislature had it foreseen the manner in which the liquidation of the project would be carried out and the resultant consequences to the counties involved.

Respondents argue that the sale of the lands by the state free from delinquent taxes, and the payment of the losses sustained by the counties thereby, conferred a benefit upon the purchaser, and therefore constitute a gift to the purchaser. But we think it clear that the state itself was the principal beneficiary, since the sale of the lands free from all delinquent taxes undoubtedly enabled it to obtain a higher price for the property than if the same had been sold subject to delinquent taxes. In such manner the state in reality received at least a portion of the taxes which otherwise would have been paid to the respective counties had proper provision for the payment of said taxes been made in the previous acts of the Legislature. We may not hold the act unconstitutional as conferring a gift upon the purchaser unless such fact clearly appears. Pawnee County Excise Board v. Kurn, supra.

Respondents further urge that the cancellation of the taxes by the county authorities was without authority of law; that the tax liability has not been affected thereby, and that the taxes may still be collected from the purchaser of the lands. But it appears that said cancellation was made by order of the Board of Public Affairs, and upon the advice and written opinion of the State Examiner and Inspector, and of the Attorney General, for the purpose of assisting the state in liquidating the state project and winding up its affairs. To hold that the county should now reassess the lands for taxes and attempt to collect them from the purchaser, who apparently purchased said lands with the assurance that all taxes had been cancelled, would be to hold that the county could disregard the action of the state, and impose a liability on the purchaser not contemplated by him or by the state when it sold the land to him by legal process. Furthermore, it is stated by petitioner, and not denied by respondents, that the greater portion of the lands involved has been acquired by the federal government in connection with the Denison Dam across the Red river and same have been inundated.

It appears that the counties have duly and properly performed everything required by Senate Joint Resolution No. 12 as a prerequisite to the reimbursement for the taxes of which they have been deprived by the establishment and liquidation of the State Prison Farm, and that the amount due said counties has been examined and approved by the State Examiner and Inspector and the State Board of Affairs. And, since we hold that Senate Joint Resolution No. 12 is a valid law, they are entitled to have their claims audited, allowed, and paid.

Writ granted.

DAVISON, V.C.J., and WELCH, CORN, and ARNOLD, JJ., concur. HURST, C.J., and RILEY, BAYLESS, and GIBSON, JJ., dissent.