2012 OK 99

**In the Matter of the Application of the OKLAHOMA CAPITOL IMPROVEMENT AUTHORITY for Approval of $25 Million Oklahoma Capitol Improvement Revenue Bonds, Series 2012a (River Parks Authority Projects).**

No. 111015.

Supreme Court of Oklahoma.

Nov. 20, 2012.

E. Scott Pruitt, Attorney General for the State of Oklahoma, David L. Kinney, Lyn Martin–Diehl, Assistants Attorney General, Oklahoma City, Oklahoma, Lynne Driver, Norman, Oklahoma, for Applicant.

Protestant Senator Patrick Anderson, Protestant C.L. Elliott, Enid, Oklahoma, Pro Se.

Gary M. Bush, Oklahoma City, Oklahoma, for River Parks Authority, Amicus Curiae.

James C. Milton, Bryan J. Nowlin, Travis G. Cushman, Tulsa, Oklahoma, for Tulsa Metropolitan Chamber of Commerce, Inc., Amicus Curiae.

David E. O'Melilia, City Attorney, Gerald M. Bender, Litigation Division Manager, Jason T. Seay, Assistant City Attorney, Tulsa, Oklahoma, for the City of Tulsa, Amicus Curiae.

Diane M. Pedicord, Oklahoma City, Oklahoma, for Oklahoma Municipal League, Inc., Amicus Curiae.

David L. Weatherford, Tulsa, Oklahoma, for City of Sand Springs, Amicus Curiae.

C. Miles Tolbert, Oklahoma City, Oklahoma, or Holly Refining & Marketing, Amicus Curiae.

C. Michael Zacharis, Tulsa, Oklahoma, for Sooner Rowing Assoc., Amicus Curiae.

G. Michael Lewis, Tulsa, Oklahoma, for Public Service Company of Oklahoma, Amicus Curiae.

Lowell Lee Peterson, City Attorney, Glenpool, Oklahoma, for City of Glenpool, Amicus Curiae.

**KAUGER, J.**

¶ 1 The Oklahoma Capital Improvement Authority (OCIA) has applied for the Court's approval of revenue bonds pursuant to 73 O.S. Supp.2009 § 336.[1] We determine that the proposed bonds are unconstitutional. Accordingly, we deny the application.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In 2009, the Oklahoma Legislature passed Senate Bill No. 239 which became

---

1. Title 73 O.S.2009 § 336 provides:

A. The Oklahoma Capitol Improvement Authority (OCIA) is authorized to acquire real property, together with improvements located thereon, and personal property for purposes of construction of Zink Dam improvements, stream bank stabilization and construction of two additional low-water dams on the Arkansas River in Tulsa County. The project will be coordinated with representatives of the City of Tulsa, Tulsa County and surrounding communities, the Indian Nations Council of Governments and the United States Army Corps of Engineers. The said projects herein described are hereby determined to be in the best interests of the State of Oklahoma and will accomplish an important public purpose. The OCIA may acquire and hold title to the real property and improvements, or any interest therein, until such time as any obligations issued for this purpose are retired or defeased and may lease the real property and improvements to the River Parks Authority, a public trust in Tulsa County. Upon final redemption or defeasance of the obligations created pursuant to this section, title to the real property and improvements shall be transferred from the Oklahoma Capitol Improvement Authority to the River Parks Authority.

B. For the purpose of paying the costs for acquisition of the real property and improvements and personal property authorized in subsection A of this section, and for the purpose authorized in subsection C of this section, the OCIA is hereby authorized to borrow monies on the credit of the income and revenues to be derived from the leasing of such real property and improvements and, in anticipation of the collection of such income and revenues, to issue negotiable obligations, in one or more series, in an amount sufficient to generate net proceeds of Twenty-five Million Dollars ($25,000,000.00) after providing for costs of issuance, credit enhancement, reserves and other associated expenses related to the financing. It is the intent of the Legislature to appropriate to the Department of Central Services sufficient monies to make rental payments for the purposes of retiring the obligations created pursuant to this section.

C. To the extent funds are available from the proceeds of the borrowing authorized by subsection B of this section, the OCIA shall provide for the payment of professional fees and associated costs approved by the OCIA.

D. The OCIA may issue obligations in one or more series and in conjunction with other issues of the OCIA. The OCIA is authorized to hire bond counsel, financial consultants, and such other professionals as it may deem necessary to provide for the efficient sale of the obligations and may utilize a portion of the proceeds of any borrowing to create such reserves as may be deemed necessary and to pay costs associated with the issuance and administration of such obligations.

E. The obligations authorized under this section may be sold at either competitive or negotiated sale, as determined by the OCIA, and in such form and at such prices as may be authorized by the OCIA. The OCIA may enter into agreements with such credit enhancers and liquidity providers as may be determined necessary to efficiently market the obligations. The obligations may mature and have such provisions for redemption as shall be determined by the OCIA, but in no event shall the final maturity of such obligations occur later than fifteen (15) years from the first principal maturity date.

F. Any interest earnings on funds or accounts created for the purposes of this section may be utilized as partial payment of the annual debt service or for the purposes directed by the OCIA.

G. The obligations issued under this section, the transfer thereof and the interest earned on such obligations, including any profit derived from the sale thereof, shall not be subject to taxation of any kind by the State of Oklahoma, or by any county, municipality or political subdivision therein.

H. The OCIA may direct the investment of all monies in any funds or accounts created in connection with the offering of the obligations authorized under this section. Such investments shall be made in a manner consistent with the investment guidelines of the State Treasurer. The OCIA may place additional restrictions on the investment of such monies if necessary to enhance the marketability of the obligations.

The statute was amended in 2012 with an apparent house keeping measure to change the name of Department of Central Services to the Office of Management and Enterprise Services.

codified at 73 O.S. Supp. 2009 § 336.[2] This statute concerns the Arkansas River, it authorized the OCIA to improve the City of Tulsa's Zink Dam and to construct two lower-water dams along the Arkansas River, as well as stabilize the stream. Efforts were to be coordinated with the City of Tulsa, Tulsa County, surrounding communities, Indian Nations, and the United States Army Corps of Engineers. It also provided for $25 million in bonds to finance the project.[3]

¶3 The OCIA was created and operates pursuant to 73 O.S.2011 §§ 151 *et seq.*[4] The River Parks Authority (RPA) is a public trust created by the City of Tulsa and Tulsa County to develop and maintain the public park located in the City of Tulsa along the Arkansas River, commonly referred to as River Parks.[5] The Zink Dam, the dam which currently controls the water level along the park, is owned by the City of Tulsa and operated by the RPA. The proposed bond project includes a lease arrangement between the RPA and Department of Central Services (DCS). The RPA would lease any improvements made to the Zink Dam and DCS will receive annual appropriations from the Legislature to make the lease payments to the RPA. This is how the bonds are to be financed.

¶4 On August 29, 2012, pursuant to 20 O.S.2011 § 14.1,[6] the OCIA filed in this Court the application for approval of the $25 million dollar bond issue to improve the Arkansas River in Tulsa County, Oklahoma,

2. Title 73 O.S. Supp.2009 § 336, see note 1, supra.

3. Title 73 O.S. Supp.2009 § 336, see note 1, supra.

4. The OCIA was established to provide adequate and suitable space for state offices and improve and expand highway infrastructures for the State. The OCIA authorized the bonds on January 30, 2012, and the Council of Bond Oversight approved them on February 9, 2012. The State Bond Advisor extended the approval on July 24, 2012. The Attorney General issued an opinion confirming the constitutionality of the bonds on February 28, 2012, and the OCIA authorized the filing of this action for approval. Title 73 O.S. 2011 § 151 provides:
The purpose of this act is to provide adequate and suitable space for offices and other necessary uses for all departments and agencies of the state, particularly the ones now paying or which hereafter may be required to pay rent, and for the purpose of increasing the efficiency of the operation of state departments and agencies, and to eventually cause the State of Oklahoma to receive all the benefit of the rents now being paid by state departments and agencies. It shall also be the purpose of this act to provide an improved and expanded highway infrastructure for the health, safety, and welfare of the traveling public in this state and for the continued economic development of this state.
Title 73 O.S.2011 § 152 provides in pertinent part:
A. There is hereby created a body corporate and politic to be known as the "Oklahoma Capitol Improvement Authority" and by that name the Authority may sue and be sued and plead and be impleaded. The Authority is hereby constituted an instrumentality of the state and the exercise by the Authority of the powers conferred by Sections 151 through 214 of this title, in the construction, equipping, operation, and maintenance of the state building or buildings hereinafter referred to as the "building", and in the construction, improvement, repair, and maintenance of the highway infrastructure in this state, shall be deemed and shall be held to be an essential governmental function of the state....

5. River Parks Authority web page: www.riverparks.org. City Code of Tulsa establishing River Parks Authority as included in Senator Anderson's appendix filed September 21, 2012. The River Parks consist of 26 miles of asphalt-surfaced trails that weave past gathering areas, playgrounds, fountains and sculptures along the banks of the Arkansas River in Tulsa. The park's varied landscape ranges from manicured lawns to the rugged terrain of the Turkey Mountain Urban Wilderness. It offers dual trails for pedestrians and cyclists, plus seasonal enjoyment of fishing, rowing, kayaking, disc golf, the Blue Rose restaurant, and an outdoor cafe, Elwood's. It has more than 45 miles of dirt trails on nearby Turkey Mountain for hiking, mountain biking and horseback riding. Outdoor events occur at the River Parks throughout the year featuring concerts, festivals, fireworks and numerous running and cycling competitions.

6. Title 20 O.S.2011 § 14.1 provides in pertinent part:
Any department, institution, board, bureau, division, commission, agency, trusteeship, or authority of state government authorized to issue bonds, notes, or other evidences of indebtedness may, upon advice of bond counsel or upon governing board approval, file an application with the Supreme Court of Oklahoma for the approval of any obligations to be issued by it. Exclusive original jurisdiction shall be conferred upon the Supreme Court to hear and determine each such application pursuant to rules and procedures designated by the Court....

known as the River Project. The Tulsa Metropolitan Chamber of Commerce, the Cities of Sand Springs, Tulsa, and Glenpool, and the RPA participate *amicus curiae,* and support the bond issue as economically advantageous to the State of Oklahoma. They also insist that the bonds serve a valid public purpose and that the proposed use is consistent with the statutory authorization. The parties have consented to their participation.

¶ 5 State Senator Patrick Anderson and C.L. Elliott, a former chairman of the Council of Bond Oversight for the State of Oklahoma filed objections, protesting to the bond issue. They argue that the bonds violate the Okla. Const., art. 10, §§ 14, 15, and 16,[7] as well as art. 10, § 25.[8]

 ¶ 6 Currently pending is a nearly identical district court lawsuit involving the same parties. Title 20 O.S.2011 § 14.1,[9] clearly provides the Supreme Court with **exclusive original jurisdiction** to hear and determine a bond application such as this. Nevertheless, on August 22, 2012, six days before this application was filed, Senator Anderson filed a petition in the District Court of Oklahoma County (Case No. CV–2012–1785). In that case, he sought a declaratory judgment, as a citizen, taxpayer, and member of the Legislature, to have 73 O.S. 2011 § 336 declared unconstitutional.[10]

**7.** The Oklahoma Constitution, art. 10, § 14 provides:

14. Levy and collection by general laws and for public purposes—Assumption of debts.
A. Except as otherwise provided by this section, taxes shall be levied and collected by general laws, and for public purposes only, except that taxes may be levied when necessary to carry into effect Section thirty-one of the Bill of Rights. Except as required by the Enabling Act, the State shall not assume the debt of any county, municipal corporation, or political subdivision of the State, unless such debt shall have been contracted to defend itself in time of war, to repel invasion, or to suppress insurrection.
B. Subject to requirements imposed by law, use of public facilities of institutions within The Oklahoma State System of Higher Education shall be authorized by this section if the use is made in connection with a project involving the research or development of a technology, whether or not the technology is protected pursuant to federal or state law governing intellectual property, the results of which have potential economic value for a business enterprise or private business entity involved in the project with the institution.
The Oklahoma Constitution, art. 10, § 15 provides in pertinent part:
15. Pledge or loan of credit—Donation—Exceptions.
A. Except as provided by this section, the credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State, nor shall the State become an owner or stockholder in, nor make donation by gift, subscription to stock, by tax, or otherwise, to any company, association, or corporation. . . .
The Oklahoma Constitution art. 10, § 16 provides:
16. Borrowing money—Specification of purpose—Use.
All laws authorizing the borrowing of money by and on behalf of the State, county, or other political subdivision of the State, shall specify the purpose for which the money is to be used, and

the money so borrowed shall be used for no other purpose.

**8.** The Oklahoma Constitution, art. 10, § 25 provides:

25. Authorization of debt—Annual tax—Submission to voters—Final passage.
Except the debts specified in sections twenty-three and twenty-four of this article, no debts shall be hereafter contracted by or on behalf of this State, unless such debt shall be authorized by law for some work or object, to be distinctly specified therein; and such law shall impose and provide for the collection of a direct annual tax to pay, and sufficient to pay, the interest on such debt as it falls due, and also to pay and discharge the principal of such debt within twenty-five years from the time of the contracting thereof. No such law shall take effect until it shall, at a general election, have been submitted to the people and have received a majority of all the votes cast for and against it at such election. On the final passage of such bill in either House of the Legislature, the question shall be taken by yeas and nays, to be duly entered on the journals thereof, and shall be: "Shall this bill pass, and ought the same to receive the sanction of the people?"

**9.** Title 20 O.S.2011 § 14.1, see note 6, supra.

**10.** The declaratory judgment action was brought pursuant to 12 O.S.2011 § 1651 *et seq.* Section 1651 provides:

District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of any foreign judgment or decree, deed, contract, trust, or other instrument or agreement or of any statute, municipal ordinance, or other governmental regulation, whether or not other relief is or could be claimed, except that no declaration shall be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after

¶ 7 Jerry Fent, an Oklahoma Taxpayer, filed a motion to intervene in the District Court objecting to the district court's jurisdiction to hear the validity of an Oklahoma bond issue. Fent's motion to intervene has not been ruled on nor has the district court made a ruling.

¶ 8 In this cause, the Protestants argues that the Court should not assume jurisdiction of this matter because it has exclusive jurisdiction to determine questions of law.[11] They insists issues of fact exist which need to be resolved in the district court, including issues such as: 1) what entity has a legal right to make improvements to the Zink Dam; and 2) what entity has an insurable interest in the improvements to the Zink Dam in order to protect the bond holders. Because it is more judicially efficient for this

Court to decide the matter and because this cause is of significant public interest our decision renders the district court action moot.

## I. Authorization of the OCIA

¶ 9 One of the Protestants' most elementary arguments is that the purpose of the OCIA is to provide adequate and suitable space for offices and to improve and expand the State highway infrastructures[12] and because the Zink Dam is neither a State office facility nor a highway improvement, the OCIA has exceeded its statutory authority. The attorney general and the *amicus curiae* counter that, regardless of the general purpose of the OCIA, in § 336 the legislature specifically authorized bonds for improving the Zink Dam.[13] This argument is reinforced

judgment or for compensation alleged to be due under workers' compensation laws for injuries to persons. The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; provided however, that a court may refuse to make a determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.

In the district court action, the Senator contends that the Legislature, when it enacted § 336, believed that $50 million dollars in federal funds would be secured and coupled with the State's $25 million bond issue to create a series of low water dams along the Arkansas River to create 9,450 jobs and have a positive economic impact of $2.8 billion on the State of Oklahoma. However, the $50 million in federal funds has become unavailable and now the OCIA intends to use the funds to raise the level of the Zink Dam in Tulsa to enhance the City of Tulsa's Riverside Park without benefit to the State as a whole. Protestants contend that because the State has no ownership interest in the dam, such an expenditure of public funds by the State would violate the State's prohibition against loaning its credit to counties or municipalities contrary to art. 10, § 15, assuming debts or liabilities of counties, cities or political subdivision contrary to art. 10, § 14, using borrowed money for other purposes than specified contrary to art. 10, § 16, and borrowing money base on general credit without voter approval contrary to art. 10, § 25. They also insists that the bonds are not self liquidating nor does the State have any insurable interest in the dam.

**11.** Title 73 O.S.2011 § 160 provides:
The Oklahoma Capitol Improvement Authority may file an application with the Supreme Court of Oklahoma for the approval of bonds issued hereunder, and exclusive original jurisdiction is

hereby conferred upon the Supreme Court to hear and determine each application. The court shall give the applications precedence over the other business of the court and consider and pass upon the applications and any protests which may be filed thereto as speedily as possible. Notice of the hearing on each application shall be given by notice published in a newspaper of general circulation in the state that on a day named the Authority will ask the court to hear its application and approve the bonds. The notice shall inform all persons interested that they may file protests against the issuance of the bonds and be present at the hearing and contest the legality thereof. The notice shall be published one time not less than ten (10) days prior to the date named for the hearing and the hearing may be adjourned from time to time in the discretion of the court. If the court shall be satisfied that the bonds or any portions thereof have been properly authorized in accordance with this act and the Constitution of Oklahoma, and that when issued they will constitute valid obligations in accordance with their terms, the court shall render its written opinion approving the bonds and shall fix the time within which a petition for rehearing may be filed. The decision of the court shall be a judicial determination of the validity of the bonds, shall be conclusive as to the Authority, the State of Oklahoma, its officers, agents and instrumentalities, and all other persons, and thereafter the bonds so approved and the rents and revenues pledged to their payment shall be incontestable in any court in the State of Oklahoma.

**12.** Title 73 O.S.2011 §§ 151–152, see note 4, supra.

**13.** Title 73 O.S. Supp.2009 § 336, see note 1, supra.

by *In the Matter of the Application of the Oklahoma Capitol Improvement Authority,* 2005 OK 90, ¶ 12, 130 P.3d 232, wherein we stated that:

> The statutes enabling the Authority empower it to do certain things. 73 O.S.2001 & Supp.2004 § § 151–332. While they generally empower it to issue bonds for the construction of highways or buildings, they do not limit the Authority's power to those purposes.

Implicit in this holding is that nothing in the enabling statute precludes the Legislature from directing the OCIA to issue bonds for another purpose—as directed by the Legislature. Consequently, this argument is unpersuasive.

## II. Article 10 § § 14–15 of the Oklahoma Constitution

¶ 10 Article 10, § 14(A) prohibits the State from assuming the debt or liabilities of any county, municipal corporation, or political subdivision of the State.[14] Article 15(A) prohibits the State from extending credit to any municipality or political subdivision of the State.[15] The Protestants argue that because the City of Tulsa undisputedly owns the Zink Dam, improvements to it cannot be assumed by the State without violating §§ 14 and 15 of the Oklahoma Constitution. The Proponents contend that §§ 14 and 15 are not violated where the State's credit is not being given, pledged or loaned to the RPA. Nor is the RPA borrowing money or repaying the State.

¶ 11 The Protestants contend that the State is committing to borrow money for the benefit of a single municipality and its operating public trust which is being paid from appropriated State dollars. They insists that borrowing money for the benefit of a single municipality is tantamount to assuming the debt or anticipated debt of the municipality and as such violates these provisions. The *amicus curiae* do not dispute that the State

does not own the Zink Dam, but they argue the State will own an interest **in the improvements** made to the Dam, so it does, in fact, hold sufficient legal interests to secure the indebtedness and ensure that the funds are used for a public purpose.

¶ 12 In *Reherman v. Oklahoma Water Resources Bd.,* 1984 OK 12, 679 P.2d 1296, we held that a provision of a bond resolution which allowed the State Water Resources Board, in event of default of a local entity, to transfer monies from the debt service reserve fund to pay the principal of loan of a defaulting local entity to cover any deficiencies occurring in the debt service fund, violated constitutional prohibitions against State's assumption of the debt of a county, municipal corporation, or political subdivision and pledging or lending of state's credit to local entities. We held that the principle of equity applied that what may not be done directly should not be allowed to be done indirectly.[16]

We further reiterated a point that this Court made shortly after statehood:

> [a]n act violating the true intent and meaning of the Constitution, although not within the letter, is as much within the purview and effect of a prohibition as if within the strict letter; and an act in evasion of the terms of the Constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in express terms forbidden.[17]

¶ 13 The Protestants cite to *Reherman* to support their contention that the fictional lease structure set up to finance the Zink Dam using the bond issue violates § 14. The logic in *Reherman* also applies to § 15, because the two provisions are intertwined. The State's involvement in this project exists only to lend its credit to and make a donation for the benefit of the municipality. If the State of Oklahoma, through the OCIA, is to hold title only long enough to borrow money

**14.** The Oklahoma Constitution, art. 10, § 14, see note 7, supra.

**15.** The Oklahoma Constitution, art. 10, § 15, see note 7, supra.

**16.** *Reherman v. Oklahoma Water Resources Bd.,* 1984 OK 12, ¶ 15, 679 P.2d 1296.

**17.** *Reherman v. Oklahoma Water Resources Bd.,* see note 16, supra. (quoting *Trapp v. Cook Const. Co.,* 1909 OK 259, 24 Okla. 850, 105 P. 667.)

and complete the improvements before transferring full ownership back to the municipality, then it would certainly appear that the bond issue is violating the spirit of §§ 14 and 15 if not the exact letter. In that regard, the Attorney General's assertions that the provisions of §§ 14 and 15 are not literally being violated does not matter, if the effect is to circumvent them. This appears to be what is happening here. Consequently, the proposed bonds are unconstitutional under §§ 14 and 15. Because we determine the proposed bonds are unconstitutional, we need not address the remaining arguments of the parties.

### CONCLUSION

¶ 14 The proponents of the bonds go to great lengths to attempt to show that the bond issues will provide the State of Oklahoma not only with economic benefits, but cultural and ecological benefits as well.[18] In reality, the bonds appear to be nothing more than a gift to the City of Tulsa and surrounding communities from the State. This type of gift is precisely what is prohibited by the Okla. Const., art. 10, §§ 14–15. Accordingly, the proposed bonds are unconstitutional.

**APPLICATION FOR APPROVAL OF THE $25 MILLION DOLLAR OKLAHOMA CAPITOL IMPROVEMENT AUTHORITY CAPITOL IMPROVEMENT REVENUE BONDS, SERIES 2012A (RIVER PARKS AUTHORITY PROJECTS) DENIED.**

ALL JUSTICES CONCUR.

---

18. They contend that: 1) the Arkansas River drains about ⅔ thirds of Oklahoma's land area and is a major alluvial aquifer; 2) improvements will enhance boating and fishing in the Tulsa region; 3) it will be a tourist attraction and draw for retail and other developments along the Arkansas River; 4) substantial public benefits are derived by the fact that various representatives such as the City of Tulsa, Tulsa County and surrounding communities must work together; and 5) ownership of the portion of the area is not for debate for the Courts, but, rather, within the purview of the Legislature.