Question Submitted by: Ms. Deby Snodgrass, Executive Director, Oklahoma Tourism and Recreation Department
2014 OK AG 6
Decided: 04/22/2014
Oklahoma Attorney General Opinions

Cite as: 2014 OK AG 6, __ __

 
Â¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
May the Oklahoma Tourism and Recreation Commission, pursuant to its statutory authority and consistent with constitutional limitations on the use of public funds, lease municipal land for the operation of a public park if the expenses associated with such lease and operation result in a financial loss to the Commission?
Introduction
Â¶1 The Oklahoma Tourism and Recreation Commission ("Tourism Commission" or "Commission") was created in 1972 pursuant to the Oklahoma Tourism and Recreation Act. See 1972 Okla. Sess. Laws ch. 152, Â§ 2. The statutory purposes of the Tourism Commission, along with the department that it oversees, include the following: 




to "[c]onserve and protect the parkland under the control of the Commission;" 
to "[o]versee the operation and maintenance of the state's lodges and golf courses;" 
to "[p]romote tourism by publicity and dissemination of information;" 
to "[a]ssist in promotion of events sponsored by municipalities, associations, and organizations commemorating special events of local or historical interest;" 
to "[e]ducate the public on the people, places, events, culture, and history of Oklahoma; and" 
to "[f]unction in an advisory capacity to the Governor, State Legislature, state agencies, municipalities, and to private organizations on matters pertaining to tourism and recreation." 




74 O.S.2011, Â§ 2202(A). 
Â¶2 In addition to these broad purposes, the Commission is granted certain specific authority by statute. With regard to state parks, the Commission is authorized to "[h]ave the exclusive possession and control of, and to operate and maintain for the benefit of the people of the State of Oklahoma all state parks and all lands and other properties now or hereafter owned or leased by the state or Commission for park or recreational purposes[.]" 74 O.S.2011, Â§ 2212(1). The Commission also is specifically authorized to acquire, maintain, use and operate real property deemed "necessary or convenient to the exercise of [its] powers, rights, privileges and functions[.]" Id. Â§ 2212(2). The Commission may acquire such property through a variety of means, including "purchase, exchange, lease, gift, condemnation, or in any other manner[.]" Id; see also id. Â§ 2212(3) (authorizing the Commission "from time to time [to] lease, without restriction as to term, any property which the Commission shall determine to be necessary or convenient to more fully carry into effect [its] duties and powers").
Â¶3 According to your request, the Tourism Commission currently leases property from certain Oklahoma municipalities for the purpose of operating public parks. In each case, the Commission pays only nominal consideration for the lease, but pays the municipality to provide services such as water, sewer and trash collection in the park. In addition, we understand that the Commission incurs additional cost to provide law enforcement, groundskeeping and maintenance services for the parks. Finally, our understanding is that in some of these parks, the Commission has paid to erect or improve certain structures on park property. According to your request, each park operates at a financial loss to the Tourism Commission.
Analysis
Â¶4 You ask whether the Commission's use of appropriated funds to lease and maintain municipal land for state-run parks as described above comports with applicable law. By the plain terms of Section 2212, the Commission may lease real property that is "necessary or convenient" to the exercise of the Commission's statutory functions. See 74 O.S.2011, Â§ 2212(2). Of course, one such function is the operation and maintenance of state parkland and other property "now or hereafter owned or leased by the state or Commission for park or recreational purposes[.]" Id. Â§ 2212(1). Accordingly, the leasing arrangements you describe are statutorily permissible.
Â¶5 As you recognize in your request, the use of public funds also must satisfy certain constitutional requirements. Specifically, you ask whether the leasing of municipal land for public parks, including the ancillary expenses incurred to operate the parks in question, violates either of two clauses in Sections 14 and 15 of Article X of the Oklahoma Constitution. First, Section 14 prohibits the State from "assum[ing] the debt of any county, municipal corporation, or political subdivision of the State." Okla. Const. art. X, Â§ 14(A). Second, under Section 15 "the credit of the State shall not be given, pledged, or loaned to any . . . municipality, or political subdivision of the State[.]" Okla. Const. art. X, Â§ 15(A). We address each constitutional provision in turn.[1]

Â¶6 In common usage, debt is defined as "something (as money, goods, or services) owed by one person to another." See Webster's Third New International Dictionary 583 (3d ed. 1993). "Assumption of indebtedness, in the ordinary acceptation of the words, means for one person to bind himself to pay the debt incurred by another." Pawnee County Excise Bd. v. Kurn, 101 P.2d 614, 618 (Okla. 1940) (quoting Salmon River-Grande Ronde Highway Improvement Dist. v. Scott, 27 P.2d 183, 184 (Ore. 1933)). In addition to prohibiting the literal assumption of municipal debt, Section 14 also prohibits financing arrangements that involve state instrumentalities issuing bonds for the benefit of a particular municipality, see In re Oklahoma Capitol Improvement Authority, 289 P.3d 1277, 1282-83 (Okla. 2012), or essentially serving as a contingent guarantor of a municipal obligation. See Reherman v. Okla. Water Res. Bd., 679 P.2d 1296, 1301 (Okla. 1984).
Â¶7 Based on your description of the Tourism Commission's leasing arrangements, nothing therein can be characterized as an assumption of municipal debt by the Commission. The Commission's lease of land from the municipalities merely creates a lessor-lessee relationship,
[2] while concomitant payments to the municipalities for the provision of utility and other services amounts to nothing more than a consumer-provider relationship. In return for the amounts expended, the Commission is receiving control of the leased property and the benefits of the services provided by the municipalities. While this arrangement may be economically beneficial to the municipalities and arguably detrimental to the finances of the Commission, it does not involve an assumption of municipal debt or other financing scheme that would be prohibited by Section 14.
Â¶8 For similar reasons, the leasing arrangement does not involve a pledge of credit by the State that would violate Section 15 of Article X of the Oklahoma Constitution. See Okla. Capitol Improvement Auth., 289 P.3d at 1282 (describing the provisions of Sections 14 and 15 as "intertwined"). Credit is commonly understood to mean, among other things, "financial or commercial trustworthiness[.]" See Webster's Third New International Dictionary at 533; see also A.G. Opin. 84-5, at 15 (defining "credit" in the context of Section 15 as "[t]he ability of a business or person to borrow money, or obtain goods on time, in consequence of the favorable opinion held by the particular lender as to solvency and reliability") (quoting Black's Law Dictionary 331 (rev. 5th ed. 1979). There is simply nothing in the leasing arrangements that involves the municipalities benefitting in any way from a pledge or loan of credit from the State. Accordingly, the leasing arrangements do not violate that provision of Section 15.
Â¶9 Finally, we conclude that nothing in the leasing arrangements - including improvements made to the leased property - amounts to an unconstitutional "gift" prohibited by Section 15. See Okla. Const. art. X, Â§ 15(A) ("[N]or shall the State...make a donation by gift, subscription to stock, by tax, or otherwise, to any company, association, or corporation."). A plain reading of this prohibition shows that it does not apply to municipalities or political subdivisions. Indeed, where this office has concluded that a particular transaction was an unconstitutional gift, the transactions at issue were for the benefit of private entities, not municipalities or political subdivisions. See, e.g., A.G. Opin. 81-16 (concluding that state expenditures for permanent improvements to leased property, where the lessor is a private actor, violate Section 15); A.G. Opin. 80-283 (concluding, in part, that a state appropriation to improve properties owned by private entities violates Section 15). 



Â¶10 It is, therefore, the official Opinion of the Attorney General that:
The Oklahoma Tourism and Recreation Commission may, pursuant to 

74 O.S.2011, Â§ 2212 and Sections 14 and 15 of Article X of the Oklahoma Constitution, lease municipal land for the operation of a public park, even if the expenses associated with such operation result in a financial loss to the Commission.


E. SCOTT PRUITT
Attorney General of Oklahoma
ETHAN SHANER
Assistant Attorney General 
FOOTNOTES
[1] We note that Section 14 also requires that taxpayer funds be used only for public purposes. Okla. Const. art. X, Â§ 14(A). However, we find extended discussion of the "public purpose" requirement to be unnecessary to answer your question; there can be little dispute that operating a public park fits within the meaning of "public purpose" under Section 14(A). See, e.g., Burkhardt v. City of Enid, 771 P.2d 608, 610 (Okla. 1989) ("For taxation purposes, public use 'requires that the work shall be essentially public and for the general good of all the inhabitants of the taxing body.'") (quoting Bd. of Comm'rs v. Shaw, 182 P.2d 507, 515 (Okla. 1947)). 
[2] Of course, if the Commission wishes to discontinue these relationships, it can simply cancel the leases or elect not to renew, subject to the terms of the lease agreements.




 CitationizerÂ© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

Â 
Cite
Name
Level



Â 
1989 OK 45, 771 P.2d 608, 60 OBJ 785, 
Burkhardt v. City of Enid
Cited


Â 
1940 OK 202, 101 P.2d 614, 187 Okla. 110, 
PAWNEE COUNTY v. KURN
Cited


Â 
1947 OK 181, 182 P.2d 507, 199 Okla. 66, 
BOARD OF COMR'S OF MARSHALL COUNTY v. SHAW
Cited


Â 
2012 OK 99, 289 P.3d 1277, 
IN THE MATTER OF THE APPLICATION OF THE OKLAHOMA CAPITOL IMPROVEMENT AUTHORITY
Cited


Â 
1984 OK 12, 679 P.2d 1296, 
Reherman v. Oklahoma Water Resources Bd.
Cited

Title 74. State Government

Â 
Cite
Name
Level



Â 
74 O.S. 2202, 
Purpose
Cited


Â 
74 O.S. 2212, 
Oklahoma Tourism and Recreation Commission - Power, Rights and Privileges Related to State Parks
Discussed at Length